# IN THE MATTER OF THE ESTATE OF JAMES BICKNELL CASTLE, DECEASED.

## No. 1179.

# IN THE MATTER OF THE ASSESSMENT OF THE INHERITANCE TAX ON THE ESTATE OF JAMES BICKNELL CASTLE, DECEASED.

## No. 1186.

APPEALS FROM CIRCUIT JUDGE, FIRST CIRCUIT.
HON. W. H. HEEN, JUDGE.

ARGUED AUGUST 26, 1919.          DECIDED SEPTEMBER 6, 1919.

KEMP AND EDINGS, JJ., AND CIRCUIT JUDGE DEBOLT IN PLACE OF COKE, C. J., ABSENT.

TAXATION—*inheritance tax—dower.*

The estate which a widow takes in the property of her deceased husband as her dower does not pass to her by virtue of the intestate laws and is not subject to the inheritance tax which is chargeable only upon property which shall pass by will or by the intestate laws of this Territory.

SAME—*same—charitable and educational trusts.*

A devise to trustees in order to be exempt from an inheritance tax as being for or to be devoted to a charitable or educational purpose must be by the terms of the will given up wholly to such charitable or educational purpose.

SAME—*same—annuity.*

Where an estate is devised to trustees and such trustees are charged with the duty of paying out of such estate certain annuities, the annuities as such are not subject to the inheritance tax.

OPINION OF THE COURT BY KEMP, J.

James Bicknell Castle, late of Honolulu, died on April 8, 1918, leaving a will made in September 1907, which was admitted to probate on May 18, 1918, by which he disposed of his estate. On April 21, 1919, during the pendency of proceedings for the approval of the final accounts of the executors, the attorney general, on behalf of the Territory of Hawaii, intervened and moved for the appointment of appraisers of the estate for inheritance tax purposes, to the end that the inheritance tax due upon (a) the dower estate passing to the widow, (b) the estate transferred to the trustees, and (c) the life income passing to the son, Harold K. L. Castle, might be definitely ascertained. When the said motion was presented to the probate court having jurisdiction of the cause it was suggested by counsel that as a preliminary to the granting of the motion for the appointment of appraisers it should first be decided by the court whether any tax was due and payable from any person or persons upon any part of the estate transferred by said will or otherwise. Of course if it should be decided that no tax is due there would be no necessity for the appointment of appraisers and the motion presented by the attorney general would necessarily have to be denied. This procedure was agreed to by all parties and the question as to whether any tax is due from either the

widow, the son, or the trustees, was argued and presented to the probate court. The probate judge ruled (a) that no tax was due upon that portion of the estate which passed to the widow by way of dower, she having duly elected to take by way of dower rather than under the will, (b) that no tax was due upon the corpus of the estate which by the will was transferred to the trustees for the reason that the will created a valid, charitable trust and conveyed the remainder of the estate to the trustees for the purpose of carrying out the terms of the charitable trust, and (c) that a tax was due upon the life income which under the will was transferred to Harold K. L. Castle, the son. The probate judge allowed the Territory an interlocutory appeal from the first two rulings and allowed Harold K. L. Castle, the son, an interlocutory appeal from the last ruling as above set forth.

At the hearing on appeal the attorney general has confessed error in the ruling of the circuit judge to the effect that the annuity to Harold K. L. Castle is subject to a tax to be paid out of said annuity. In this we concur and in line with the holding of *Estate of Brown,* 24 Haw. 443, hold that as the residuary clause of the will transfers the entire estate (with the exception of the estate known as Mahuilani on Haleakala, Maui, which is devised to Julia White Castle,) to the executors and trustees, the inheritance tax (if any is due) must be paid by the executors and trustees out of the corpus of the estate. The residuary clause of the will is in part as follows:

"All the rest of my estate, real, personal and mixed, I devise and bequeath to my executors and trustees hereinafter named, for the following purposes:

"First. For the payment of my just debts and funeral expenses.

"Second.   For the following uses and purposes which I will explain in some detail.

"I want the business represented by the Hawaiian Development Company, Limited, to go on in the same way as though I were here.   The general plans of development in Kona and Koolau are very familiar to Mr. McStocker and in a broad, general way, to Mr. Withington and Mr. Thurston.   I have gone into these various enterprises prepared, if necessary for their successful establishment, to hypothecate all of my securities; but, preferably to the continued burden of heavy indebtedness, as rapidly as full value may be obtained, by selling some of my old securities, to convert the same into the new enterprises.

"In line with this, it is my present intention, and in case of my decease I desire my executors and trustees, if in their discretion it seem best, to convert two thousand (2,000) shares of Alexander & Baldwin, Limited, stock into cash, provided it can be sold for not less than two hundred dollars ($200.00) per share, putting the same into Kona investments, preferably West Hawaii Railroad Company, and into the Koolau Railway Company, either or both.   After the Kona Development Company and the sugar enterprise which I have planned to mature from the Heeia Agricultural and Koolau Companies' properties shall have become successfully established, I do not wish to expand any further in sugar, but only so far as each mill may become the central factory for the manufacture of sugar from the cane bought of small growers.

"I do not bind my executors to follow the line of development above indicated, but mean to confer upon them the widest discretion as to investment and development.   *   *   *

"My general aim in this whole matter is not to accumulate a great estate for my family or heirs beyond conserving the estate which I now possess and which may be conservatively valued as worth between a million and a million and a half, but to devote any increase thereof to the purposes hereinafter indicated.

"I desire my executors to appropriate fifteen hundred

dollars ($1500) a month to my widow, that being about the amount necessary to maintain Kainalu, Mahuilani and Puuokoa, Tantalus, if she so desires: that is to say, I desire to have nothing less than this paid to my widow for that purpose, or, if she desires, to apply to her other uses, so long as embarrassing financial conditions do not prevent. Subject to the like qualification, that is, so long as such would not shorten the above named fifteen hundred dollars ($1500.00) a month being paid to my widow, I desire to continue the payments which I now am making to an old friend and teacher in New York, Mrs. H. K. Hovey, whose present address is No. 7 West 108th Street, New York, two hundred dollars ($200.00) quarterly; and I desire to pay to Dr. T. M. Coan, present address 70 Fifth Avenue, New York City, one hundred and fifty dollars ($150) quarterly, for as long as each lives. I desire to assist Dr. N. B. Emerson in his literary work to such extent as may be necessary, not to exceed six hundred dollars ($600.00) a year during his life.

"With the successful and profitable establishment, however, of the various enterprises involved, with the requisite income subsequent thereon, I desire to have the amount paid to my widow out of the estate from its income increased to a sum not to exceed forty thousand dollars ($40,000.00) per annum.

"Upon the decease of my wife, Julia White Castle, I desire to continue an income to my son H. K. L. Castle, subject to the following conditions: The minimum not to be less than five thousand dollars ($5,000.00) per annum unless caused by financial embarrassment or inconvenience (of which the trustees shall be the absolute judges); the maximum not to exceed forty thousand dollars ($40,000.00) per annum, which forty thousand dollars ($40,000.00) shall include the income which he may be receiving from any property which I may give him prior to my decease, including the income from the one thousand (1,000) shares of stock in Alexander & Baldwin, Limited, herein mentioned, together with that derived from property derived from his mother.

"Should the development of the estate be such as to

justify the expansion into other or related lines of business than those already initiated, of which condition my executors, or a majority thereof, are fully empowered, without qualification, to decide, and its expansion through establishment of other enterprises in harmony with the ultimate object of my remaining in active business, namely, to accumulate sufficient land and capital to systematically establish an effort to introduce a high-class agricultural immigration of northern races, preferably Scandinavian, Anglo-Saxon, and Teutonic, then I desire them to expand into such enterprises without hesitation and I hereby empower them amply herein for the purpose. * * *

"After the fulfillment of the requirements upon the estate as above set forth, I desire to have any excess of income, and after the decease of my said wife and son and said other beneficiaries before named, the whole income (always subject to the decision of the executors to devote same to any business enterprises whatsoever which they may approve) to accumulate toward an educational purpose to be initiated at such time as their judgment will determine the estate amply able to carry on without closing its commercial character."

What the testator terms his strong desire as to the nature of the work he hopes to have such school accomplish is set forth in a lengthy statement in which, after expressing the belief that individuals, communities and nations are depraved and weakened by the excessive accumulation of wealth and that luxury furnishes fertile soil for their decay, he expresses the further belief that the counteraction of this influence must be accomplished, if at all, through some method of education different from that employed by established schools. The problem which he desires such school to solve is, how may provision be made for the children of the well-to-do to receive that training in the habits of work and duty which necessity provides for the children of the poor? He suggests to his trustees that in order to accomplish this end

the school should be a co-educational agricultural and domestic science school located in the country; that it should be exclusively a boarding school and not a day school; that every student should be obliged to earn a certain definite proportion of his or her training and education; that the tuition charged should be nominal, the school to become a productive farm, and the endowment calculated to meet the deficit after full value has been credited for the products of such farm.

Under our statute all property which shall pass by will or by the intestate laws of this Territory from any person who may die siezed or possessed of the same while a resident of this Territory is subject to the inheritance tax. Chapter 96 R. L. 1915. It is provided, however, in said chapter that "All property transferred * * * to any person, society, corporation, institutions, or associations of persons in trust for or to be devoted to any charitable, benevolent, educational, or public purpose, by reason whereof any such person or corporation shall become beneficially entitled, in possession or expectancy, to any such property, or to the income thereof, shall be exempt from this tax" (Sec. 1324).

It is claimed by the executors and trustees, and disputed by the attorney general, that the devise to them creates a trust for or to be devoted to an educational purpose and is therefore exempt, under the section above quoted, from the payment of the tax.

Julia White Castle, the widow of the testator, waived the provision made for her in the will and elected to take her dower, and the attorney general claims for the Territory the tax upon the dower which is disputed by the widow.

Our statutory dower is not the ordinary common law dower which was limited to a part of the real estate in which the husband had during the marriage an estate

of inheritance but is by the statute extended to include leasehold and freehold estates so held by the husband during the marriage and is also extended by the statute so as to give the wife "by way of dower" an absolute property in one-third part of all her husband's movable effects in possession or reducible to possession at the time of his death after the payment of all his just debts. Sec. 2977 R. L. 1915.

In order to determine whether the estate which the widow is given by the above statute is subject to an inheritance tax it must be determined whether it passes to her upon the death of her husband by virtue of "the intestate laws of this Territory," as there is no other expression in the inheritance tax law which could possibly make the tax apply to it. A determination of the nature of the estate which the wife has in her husband's estate by virtue of this statute will aid us in the solution of this question.

In *Carter* v. *Carter*, 10 Haw. 687, 694, Mr. Justice Frear, afterwards chief justice, in discussing the nature of the estate created by this section of our statute, speaking for the court said:

"That the estate in question was intended to be a dower estate is clear, because, (1) it is not limited to cases of intestacy; (2) it is expressly said to be 'by way of dower;' (3) it is coupled in the same section and sentence with dower in real estate, of which there can be no question; (4) it is part of an article entitled 'Of Dower;' (5) this article is part of a chapter entitled 'Of Husband and Wife,' which contains three articles entitled respectively 'Marriage,' 'Of Dower,' and 'Of Divorce and Separation,' thus showing that the estate was intended to be by virtue of the marriage relation, as a marital right, and not an estate of inheritance which naturally belongs and is put by the statute in an entirely different category; (6) the history of the law confirms this view, for when first passed in 1846, four years be-

fore the statute of descents was passed and thirteen years
before the passage of the Civil Code of which it is now
a part, it was made, with the subjects of marriage and
divorce, a subdivision of the chapter defining the duties
of governors who then had special charge and jurisdic-
tion over such matters while questions of descent were
left to the ordinary courts, and the substance of the sec-
tion in question was then part of a section under the
article relating to marriage and immediately followed
the section (afterwards section 1286 of the Civil Code)
which defined the marital rights of the husband, and
was part of a section which also defined the other mari-
tal rights of the wife (afterwards section 1287 of the
Civil Code), and it there expressly described the estate
as going to the wife 'in virtue of her marriage' as well
as 'by way of dower' and inseparably connected it with
the dower estate in real property, by having the words
'The wife shall be entitled to' in place of the words
'Every woman shall be endowed of,' found in the first
part of 1299, and merely the word 'and' in place of the
words 'she shall also be entitled,' found at the beginning
of the latter half of the section."

The effect of this is to hold that the nature of the
estate which the wife has by way of dower under this
statute is the same as the common law dower, so that
anything that may be said of common law dower is
equally applicable to this estate.  A dower right is an
interest in real estate not subject to the testator's dis-
position and is therefore not a transfer of or a succession
to property of her husband.  It is property which exists
inchoately during her husband's lifetime under the laws
applicable to intestacy.  *McDaniel* v. *Byrkett,* 120 Ark.
295, 179 S. W. 491, 493.

The term "intestate laws" is found in most of the state
statutes creating the special tax upon inheritance and
has generally been held to include or refer to the statutes
of descent and distribution and not to statutes defining
the estate which the wife has or may take by way of

dower. In *re Page's Estate,* 79 N. Y. S. 382; *McDaniel* v. *Byrkett, supra.* In Ross on Inheritance Taxation, Sec. 56, it is said: "It is true that dower had its origin and continuance by force of the law and depends upon the husband's death for its consummation. But it is quite another thing to suppose that the estate is dependent upon the law of succession or owes its existence to any such transfer as the inheritance tax statutes contemplate. Dower comes to the wife by virtue of the marriage, and the death of the husband serves only to consummate not to transmit it. The law that confers dower on the widow is not the law that appoints the inheritance property of a decedent to designated heirs."

It is true that in North Carolina and Illinois the opposite view is taken and the term "intestate laws" held to include the statute defining the estate which the wife takes by way of dower. *Corporation Commission* v. *Dunn,* 174 N. C. 679; *Billings* v. *The People,* 189 Ill. 472. But we think that the better reason as well as the weight of authority favors the view that the term does not include the dower statute and that the wife's dower does not pass to her by virtue of the intestate laws. For further authorities in support of our view see *Crenshaw* v. *Moore,* 124 Tenn. 528, 34 L. R. A. (N. S.) 1161; *In re Bullen's Estate,* 47 Utah 96; *Succession of Marsal,* 18 La. 211, 42 So. 778; *In re Weiler's Estate,* 122 N. Y. S. 608; *In re Estate of Strahan,* 93 Neb. 828, 142 N. W. 678.

This brings us to the question of whether the devise to the executors and trustees or any part of it is subject to the tax.

The attorney general has argued that the devise violates the rule against perpetuities but we do not deem it necessary to decide this question as we think the question of whether the devise is taxable can be adequately disposed of without so doing.

If the property transferred to them is transferred in trust for or to be devoted to a charitable or educational purpose it is, by virtue of the provisions of section 1324 above quoted, exempt from the tax. If it does not come within this exemption it is subject to the tax.

The commonly accepted meaning of the word "devoted," and as defined by Webster is, "to give up wholly." If we accept this definition of the word used in the statute the property transferred to the executors and trustees by the terms of the will must be "given up wholly" to the educational purpose defined in the will to bring it within the statutory exemption. "In the interpretation of statutes words in common use are to be construed in their natural, plain and ordinary significration. It is a very well settled rule that so long as the language used is unambiguous a departure from its natural meaning is not justified by any consideration of its consequences, or of public policy; and it is the plain duty of the court to give it force and effect." 36 Cyc. 1114.

We think that it is clear from a reading of the will that the first purpose for which the devise is made to the executors and trustees, and to accomplish which the whole income may be used, is to provide an income not to exceed forty thousand dollars per annum for the testator's widow during her life and after her death to continue such income to his son H. K. L. Castle. It is true that the testator says that he wants certain railroad and development schemes in which he was interested to go on in the same way as though he were here but he says that his aim in this respect is not to accumulate a great estate for his family or heirs beyond conserving the estate which he then possessed but to devote any increase thereof to the purposes thereafter indicated. Immediately after this provision in the will he directs his

executors to pay to his widow and after her death to his son the annuity above referred to, and next directs that, under certain conditions in harmony with the ultimate object of his remaining in active business of which his executors are to be the judges, land and capital be accumulated to systematically establish an effort to introduce into this Territory a high class agricultural immigration of northern races, preferably Scandinavian, Anglo-Saxon and Teutonic.

Following the provisions above detailed are the provisions relative to initiating the educational purpose set out in the last paragraph quoted from the will in the first part of this opinion.

It is significant that the testator directs that the accumulation for the educational purpose is to begin "after the fulfillment of the requirements upon the estate as above set forth."

It has been argued that the annuity to H. K. L. Castle may never become payable as the will provides that it is to begin after the death of his mother and she may survive him; that his mother having waived the provision made for her in the will and elected to take her dower no part of the property transferred may ever be devoted to providing such annuity. But we think the election of the widow to take her dower operated to accelerate the provision in favor of the son and to make his annuity immediately a charge upon the estate. *Lidgate* v. *Danford,* 23 Haw. 317, 327; *Slocum* v. *Hagaman,* 176 Ill. 533; *Trustees Church Home* v. *Morris,* 99 Ky. 317; *In re Schulz's Estate,* 113 Mich. 592.

When a widow elects to take her dower instead of accepting the provisions of the will the general rule, as announced by authorities already cited, is that the legacies which were to have been effective at her death became immediately due, unless a contrary intention of

the testator is manifest. We can see nothing in the will before us which manifests such intention. The only reason we can conceive for the postponement of the annuity to the son until the death of the widow was that she might be provided for to the full extent contemplated and when that reason for postponement ceased, as it did upon her election to take her dower, we can see no reason why the next object of the testator's bounty should be delayed in its enjoyment. It is also to be noted that since the widow elected to take her dower and thereby diminished by one-third the corpus of the estate, it is not improbable that the estate will be unable to pay to the son the maximum income authorized by the will and it will be only just that he be compensated for this impairment of the estate by receiving his annuity for a longer period of time.

We conclude that the devise to the executors and trustees is not to be devoted to the educational purpose in the sense in which the statute contemplates it should be to entitle it to the exemption and is therefore subject to the tax.

The ruling subjecting the annuity of H. K. L. Castle to the tax, and from which he has appealed, is reversed. The ruling that the widow's dower is not subject to the tax and the ruling that the devise to the executors and trustees constitutes a charitable trust, from which rulings the Territory has appealed, are as to the first affirmed and as to the second reversed and the cause remanded for further proceedings consistent with this opinion.

*H. Irwin,* Attorney General, for the Territory.

*A. Withington* (*Castle & Withington* on the brief) for the executors.

*F. M. Hatch* for Julia White Castle and H. K. L. Castle.