In the Matter of the Estate of MANUEL P. LORENZO, Deceased.

NO. 5991

NOVEMBER 5, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.*

OPINION OF THE COURT BY RICHARDSON, C.J.

Respondent-appellant Olive Lorenzo appeals from a jury verdict barring her dower interest in favor of petitioner-appellee, the executor of the estate of Manuel P. Lorenzo.

---

*Justices Kobayashi and Kidwell, who heard oral argument in this case, retired from the court on December 29, 1978, and February 28, 1979, respectively. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

We reverse the judgment and remand the case.

On July 21, 1972, appellee filed a petition to probate the estate of Manuel P. Lorenzo. The petition provided that the deceased left no spouse. On October 5, 1972, the petition was amended naming Olive Lorenzo as decedent's widow. On January 29, 1974, appellee petitioned to bar appellant's dower interest pursuant to HRS § 533-9[1] on grounds of wilful and utter desertion. A non-jury trial before the Honorable Shunichi Kimura of the Circuit Court of the Third Circuit was held on June 18, 1974, pursuant to HRS § 531-1.[2] This trial resulted in a verdict for appellee.

On August 30, 1974, appellant moved for a trial by jury pursuant to HRS § 531-2[3] on the issues of fact decided by the court in its prior ruling. In support of her motion for jury trial, appellant argued that HRS § 531-2, or in the alternative, Article I, Section 13, of the Constitution of the State of Hawaii

---

[1] HRS § 533-9 (1968):

*Barred by divorce or misconduct.* In case of divorce dissolving the marriage contract, the wife shall not be endowed.

No wife who has for one year or upwards, previous to the death of her husband, *wilfully and utterly deserted her husband,* shall be endowed or be entitled by way of dower to any property owned by him at the date of his death. (Emphasis added.)

HRS § 533-9's application has been limited. *See* HRS Chapter 560, Uniform Probate Code § 533-9 (1976).

[2] HRS § 531-1 (1968):

*No jury in first instance.* Matters of probate and of administration shall be heard and determined by the judge having jurisdiction thereof, without the intervention of a jury.

HRS § 531-1 has been repealed. *See* HRS Chapter 560, Uniform Probate Code (1976).

[3] HRS § 531-2 (1968):

*Jury on appeal, when.* Whenever the value of the estate of any deceased person exceeds $500, any person claiming, before any judge sitting as a court of probate, the estate, or any part thereof, or any interest therein, by virtue of any will or testamentary devise, or by virtue of the statutes of descent of property in the State, who deems himself aggrieved, by the decision of the probate judge at chambers, may, upon taking his appeal to the circuit court, if any matter of fact is in issue, move the appellate court that the issue of fact may be tried by a jury, and his motion shall not be denied.

HRS § 531-2 has been repealed. *See* HRS Chapter 560, Uniform Probate Code (1976).

granted her the right to a jury trial. The motion was granted by Judge Kimura over appellee's objection.

A trial before a jury with Judge Kimura presiding was held on April 28 and 29, 1975. Appellee renewed his objection to the jury trial and appellant objected to Judge Kimura presiding over the jury trial because he had presided over the original trial. Both objections were denied and the case was presented. At the conclusion of appellee's case, appellant moved for a directed verdict which was denied by Judge Kimura. She also unsuccessfully objected to the court's denial of her proposed jury instructions D, E, and F, and to the submission of appellee's proposed instructions 5 and 2. After due deliberation, the jury rendered a verdict barring appellant's dower interest.

The issues presented on this appeal and the order in which they will be discussed are:

I. Whether the trial judge erred in granting appellant's motion for a jury trial.

II. Whether the trial judge erred in presiding over the jury trial when he had presided over the original trial.

III. Whether the trial judge erred in denying appellant's proposed jury instructions D, E, and F and in granting appellee's instructions 2 and 5.

We answer the first two issues in the negative, but find that the trial judge erred in his disposition of jury instructions E, 5 and 2.[4]

I.

Appellee in his answering brief contends that Judge Kimura erred in granting the jury trial. Appellant responds with the argument that this court should not even consider this

---

[4] Appellant also raises the issue that the trial court's denial of her motion for a directed verdict was erroneous and that the judgment and verdict of the jury was not "supported by substantial evidence, more than a mere scintilla." It is unnecessary for us to reach these issues because, as discussed *infra*, the trial court's erroneous disposition of three of the jury instructions is sufficient ground for reversal.

issue because appellee failed to file a notice of appeal pursuant to Rule 73(a) (2) of the Hawaii Rules of Civil Procedure and that appellant herself did not specifically raise the issue on appeal. We agree that appellee should have noticed a cross appeal on this issue, but we may consider the contention because it is subsidiary to the other issues raised by appellant. Furthermore, Judge Kimura did not err in granting the jury trial, because we find that Article I, Section 13 of the Constitution of the State of Hawaii[5] confers such a right.

Rule 3(b) (3) of the Rules of the Supreme Court states that appellant's questions presented in his opening brief "will be deemed to include every subsidiary question fairly comprised therein." Appellant raises several issues on appeal concerning the propriety of certain of the trial judge's rulings during the jury trial. These issues can only be reached if the jury trial was properly granted in the first place. As we stated in *Shoemaker v. Takai*, 57 Haw. 599, 607, 561 P.2d 1286, 1291 (1977): "It seems that no cross appeal is necessary in order that an appellate court may review a question closely related, in substance, to a question raised by the appeal." We believe the issue of whether the trial court erred in granting appellant's motion for jury trial is a subsidiary question underlying the other issues raised by appellant, and thus, a proper question for this court's consideration.[6]

---

[5] Article I, Section 10 of the Constitution of the State of Hawaii:

In suits at common law where the value in controversy shall exceed one hundred dollars, the right of trial by jury shall be preserved. The legislature may provide for a verdict by not less than three-fourths of the members of the jury.

[6] Appellant cites *Naki v. Hawaiian Electric Co., Ltd.*, 50 Haw. 85, 431 P.2d 943 (1967), and *Orso v. City and County of Honolulu*, 56 Haw. 241, 534 P.2d 489 (1975), in support of his contention that Hawaii Rules of Civil Procedure 73(a) precludes this court from considering the issue of whether a jury trial was properly granted. Both cases are distinguishable from the instant case.

In *Naki*, it was held that this court did not have jurisdiction to hear the appeal since the trial court had not yet entered a written order on plaintiff's motion for reconsideration of the amount of damages awarded. Under Rule 73(a) of the Hawaii Rules of Civil Procedure a notice of appeal can only be filed after a final judgment. Since there was no final judgment, the appeal was premature. In the instant case the appeal is from a final judgment of the Circuit Court of the Third Circuit.

In *Orso*, this court determined that it could not consider the issues of the denial of punitive damages by the trial court put forth by appellee since appellant did not raise

Although Judge Kimura did not specify his grounds for granting appellant's motion for jury trial, appellant argues that the jury trial in this case is authorized under HRS § 531-2 or under the Constitution of the State of Hawaii. For the reasons stated *infra*, we agree with appellant's latter ground and find that the jury trial in this case was proper pursuant to Article I, Section 13 of our state constitution.

HRS § 531-1 provides that matters of probate and of administration shall be heard and determined by a judge without the intervention of a jury in the first instance. However, HRS § 531-2 qualifies § 531-1 by allowing a jury trial in the same case after the probate judge's decision "whenever the value of the estate of any deceased person exceeds $500" and the claimant takes "by virtue of any will or testamentary devise or by virtue of the statutes of descent of property in the state." Manuel Lorenzo's estate is valued over $500. However, Olive Lorenzo, claimant in this case, claims by way of a dower interest, an interest not by virtue of any will or statute of descent. *In Re Estate of Brenig*, 7 Haw. 640 (1889); *Carter v. Carter*, 10 Haw. 687 (1897); *Y. Ahin v. Opele*, 17 Haw. 525 (1906); *Estate of Castle*, 25 Haw. 108 (1919). Thus, appellant's demand for a jury trial cannot be based on HRS § 531-2.

Article I, Section 13 of the Constitution of the State of Hawaii preserves the right of trial by jury in suits at common law. Although dower was a creature of the common law,[7] a

---

the issue and appellee did not file a proper notice of appeal pursuant to Hawaii Rules of Civil Procedure 73(a). Appellant did raise the issue of excessive *compensatory* damages. But the issue of the denial of punitive damages is not subsidiary to the issue of excessive compensatory damages. Although arising from the same cause of action they are separate and unrelated remedies. Thus, the issue of punitive damages could not be considered pursuant to Rule 3(b) (3) of the Rules of the Supreme Court.

In the present case, the proper granting of a jury trial is an issue necessarily precedent to the issue of the judge's proper conduct during that same jury trial. If we find that the jury trial was improperly granted, the issue of the propriety of the judge's conduct during that trial need not even be reached.

[7] At common law a widow was entitled on the death of her husband to a life estate in one-third of the lands of which he had been seised at any time during the marriage of an estate in fee simple or in fee tail, provided that the estate was one capable of being inherited by issue of the marriage. C. MOYNIHAN, INTRODUCTION TO THE LAW OF REAL PROPERTY (1961), *See* BURBY, REAL PROPERTY § 85 (3d ed. 1965), 2 POWELL ON REAL PROPERTY § 209 (1977).

number of states have modified the concept by statute. The Hawaii Legislature has codified the common law dower right in its enactment of HRS § 533-1.[8] Despite dower's current statutory form, its purpose and effect remain the same as that established at common law — as a marital right created to provide an assured means of support for the surviving wife. G. THOMPSON, 4A COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 1911 (repl. 1961). Thus, Hawaii's statutory dower rights do not create an entirely new cause of action but originate in the common law. Merely because the concept of dower has been statutorily modified does not alter its essential character as being part of the common law.[9] In fact, this court in *Estate of Castle*, 25 Haw. 108, 116 (1919), stated: "[T]he nature of the estate which the wife has by way of dower under the statute is the same as under common law dower so that anything that may be said of common law dower is equally applicable to this estate." *See generally Carter v. Carter*, 10 Haw. 687, 693 (1897). Accordingly, the right to jury

---

[8] HRS § 533-1:

*Dower.* Every woman shall be endowed of one-third part of all the lands owned by her husband at any time during marriage, in fee simple, or in freehold, *unless she is lawfully barred thereof.* She shall also be entitled, by way of dower, to an absolute property in the one-third part of all his remaining property owned by him at the date of his death, after the payment of all his just debts. The interests to which the wife is entitled in accordance with this section in the husband's real and personal property shall not apply to, and nothing in this section shall be deemed to give to the wife any interest in, the husband's interest in community property, real or personal. (Emphasis added)

This section has been subsequently amended since the enactment of the Uniform Probate Code in 1976. *See* HRS § 533-1 (1976). Article VIII, section 8-101 of that chapter preserves those rights which accrued under the case and statutory law relating to dower which became vested prior to July 1, 1977. The applicable provisions governing the rights of a surviving spouse after June 30, 1977 are now governed by the Uniform Probate Code, Chapter 560, primarily Article II, parts 2, 3 and 4.

---

[9] Compare this situation to that in *Anderson v. Hawaiian Dredging Co., Ltd.*, 24 Haw. 97 (1917), where we held that the right of trial by jury did not attach to suits brought pursuant to the new Workmen's Compensation Acts. Although the right to trial by jury extended to actions at common law, the common law action for damages for personal injury sustained by employees in industrial employment was abolished by the Workmen's Compensation Acts. The Acts also created a new cause of action and measure of compensation.

trial as preserved in suits at common law also applies to suits involving dower claims. The trial judge correctly granted appellant's motion for a trial by jury.

II.

Appellant asserts that under HRS § 601-7(a) it was error for Judge Kimura to preside over both the probate trial without a jury and the subsequent jury trial of the same case. HRS § 601-7(a) reads in pertinent part:

> § 601-7 *Disqualification of judge; relationship, pecuniary interest, previous judgment, bias or prejudice.*
> (a) No person shall sit as a judge in any case in which his relative by affinity or consanguinity within the third degree is counsel, or interested either as a plaintiff or defendant, or in the issue of which the judge has, either directly or through such relative, any pecuniary interest; nor shall any person sit as a judge in any case in which he has been of counsel or on an appeal from any decision or judgment rendered by him.

Our disposition of this issue turns on whether the second jury trial was an "appeal" within the meaning of the section. The purpose of the statute is to "secure to litigants the right of a fair and impartial review of judgments and decisions . . . before judges other than those who themselves rendered the judgments or decisions thus to be reviewed." *Estate of Beckley*, 31 Haw. 150, 154 (1929).[10] Although we indicated in our discussion of issue I *supra* that the jury trial in this case was not proper pursuant to HRS § 531-2 but proper under our state constitution, the effect of granting the jury trial is the same under both sections — namely to permit an "aggrieved party" an opportunity to try the same issues of fact before a broader panel — a jury of his peers. The judge in this second instance thus sits as if the first trial did not occur; in essence, the second trial before the jury is a trial de novo because the

---

[10] In *Estate of Beckley*, 31 Haw. 150 (1929), the court defined the policy behind section 84 of the Organic Act of the Territory of Hawaii. That section was the predecessor to HRS § 601-7(a). The language and basic policy rationale are essentially the same in both provisions.

issues of fact decided in the first trial are not given res judicata effect in the second one. Consequently, in this case Judge Kimura was not reviewing and reversing his prior decision; rather, his function at the second trial was to preside over the jury and instruct them as to matters of law.[11] His presence at the jury trial was not as a judge on appeal but as a judge in a completely new trial. Therefore, he was not disqualified by virtue of HRS § 601-7(a).

### III.

Appellant next urges this court to find that her proposed jury instructions D,[12] E,[13] and F[14] were improperly refused

---

[11] *Unauna v. Kaapokalani,* 4 Haw. 431 (1881), this court addressed a similar problem although § HRS 601-7(a) was not directly in issue. The case involved an action of trespass which resulted in an original judgment in favor of the plaintiff. The case was appealed to the Intermediary Court of Oahu and there reversed by Mr. Justice Judd. It was then appealed to the Supreme Court and the case was presented to a jury enpanelled to try the cause, with Mr. Justice Judd presiding. The jury rendered a verdict for plaintiff and defendant moved for a new trial pursuant to Article 72 of the constitution and § 820 of the Civil Code on grounds that Justice Judd was disqualified from presiding in the case. The court held that the judge presiding over the case could not be said to have been sitting alone on the appeal because it is the jury which sits on the case and determines the facts of the case, under instructions of the judge in relation to the law involved.

This rationale underlies § 601-7(a). The sections seek to secure to the parties a new tribunal on appeal and to prevent the same judge in different capacities from retrying the same facts in the case.

[12] RESPONDENT'S INSTRUCTION NO. D.

In the absence of evidence to the contrary, there is a presumption of law that a physical separation of a husband and wife is with the consent of the husband and not against his will and with justification.

[13] RESPONDENT'S INSTRUCTION NO. E.

In order to demonstrate by a preponderance of the evidence that Respondent's separation from her husband was without justification, Petitioner must demonstrate by a preponderance of the evidence that the conduct of Respondent's husband would not justify a reasonable woman under similar circumstances in living apart from her husband.

[14] RESPONDENT'S INSTRUCTION NO. F.

In order for Petitioner to demonstrate by a preponderance of the evidence that the Respondent wilfully and utterly deserted her husband, Petitioner must demonstrate by a preponderance of the evidence that Respondent's husband made a good faith effort to seek the return of his wife.

and that appellee's instructions 5[15] and 2[16] were erroneously accepted and given to the jury. We are of the opinion that appellant's instructions D and F were properly denied but that her proposed instruction E should have been granted. Furthermore, we conclude that appellee's instruction 5 should have been refused and we find that instruction 2 as given was incomplete in that it failed to incorporate the applicable burden of proof as to specific elements.

Appellant first argues that the trial court's denial of her requested instruction D constituted prejudicial error, requiring reversal of the judgment or, in the alternative, remanding the case for a new trial.

The question on review of instructions is not whether they were technically correct but whether appellant could have suffered prejudice on their account. In determining the sufficiency of a particular instruction, it is not to be considered apart from its context, or the rest of the charge. *State v. Travis*, 45 Haw. 435, 368 P.2d 883 (1962); *State v. Napeahi*, 57 Haw. 365, 556 P.2d 569 (1976).

The statutes applicable to the present discussion are HRS § 533-1 and § 533-9. Although HRS § 533-1 gives the wife a dower interest in her husband's property, she may nevertheless be lawfully barred from this interest under § 533-9 if she

---

[15] PETITIONER'S INSTRUCTION NO. 5.

It is the position of Olive Lorenzo that she was justified in leaving her husband, Manuel Lorenzo, because of the adultery of Manuel Lorenzo. In order to demonstrate by a preponderance of the evidence that Manuel Lorenzo committed adultery, in the absence of direct evidence of sexual intercourse, Olive Lorenzo must demonstrate by a preponderance of the evidence (1) an adulterous disposition, that is, licentious desire on the part of Manuel Lorenzo for the paramour, Mary Silva, and (2) opportunity for intercourse between Manuel Lorenzo and the paramour, Mary Silva.

[16] PETITIONER'S INSTRUCTION NO. 2.

Petitioner [Mr. Wilmet Lorenzo] has the burden of proof to demonstrate by a preponderance of the evidence that the Respondent [Mrs. Olive Lorenzo] wilfully and utterly deserted her husband.

In order to demonstrate by a preponderance of the evidence that the Respondent [Mrs. Olive Lorenzo] wilfully and utterly deserted her husband, it must be demonstrated by a preponderance of the evidence that the Respondent [Mrs. Olive Lorenzo] physically separated from her husband of her own will, without the consent of her husband and against his will, and without justification.

has "wilfully and utterly deserted her husband" for at least a year. Although the statute does not specify the elements constituting "wilful and utter desertion," the general rule is that there must be (1) a physical separation, (2) without the consent and against the will of the other spouse, and (3) a separation without justification. *Cf. Kiakona v. Kiakona,* 36 Haw. 49 (1941) (involving desertion as ground for divorce).[17]

Appellant's instruction D sought to impose a presumption involving these elements. The instruction stated:

> In the absence of evidence to the contrary, there is a presumption of law that a physical separation of husband and wife is with the consent of the husband and not against his will and with justification.

Appellant's sole authority for the instruction is the dissenting opinion from this court's ruling in *Kiakona v. Kiakona,* 36 Haw. 49 (1942). *Kiakona* was a divorce case based on R.L.H. § 4460 (1935) which required "utter and wilful desertion" as one of the grounds for divorce.[18] The majority affirmed the

---

[17] Although the underlying rationales for divorce and petitions to bar dower differ, we believe the interpretation of "utter and wilful" desertion in cases involving divorce are instructive for present purposes, especially in light of the scarcity of cases involving the latter issue in this jurisdiction as well as in others.

In an action for divorce, courts recognize the importance of preserving the marriage relationship, giving credence to the policy that it is not to be lightly entered nor lightly dissolved. Thus, most courts require that the grounds for severing marital ties be clearly established. On the other hand, petitions to bar dower necessarily involve situations where the husband is deceased and the main concern is the proper and fair distribution of his estate. The absence of one of the crucial parties makes proof on the issues necessarily difficult, with the result that most courts have taken the view that the one asserting the forfeiture must show an abandonment or desertion such as would entitle the injured spouse to a decree of divorce or separation. *See* Annot., 13 A.L.R.3d 446 (1967).

[18] The statute read in relevant part:

Divorces from the bond of matrimony shall be granted for the causes hereinafter set forth and no other:

FIRST: For adultery in either party; or for wilful and utter desertion for the term of six months

. . . .

This statute has been subsequently amended. The present statute dealing with divorce is embodied in HRS § 580-41 and abolishes the fault concept. The statute instead mandates the court's finding divorce if the "marriage is irretrievably broken" or if the parties have "lived separate and apart for a period of two years . . . ." HRS § 580-41(1) et. seq.

divorce decree in favor of the husband-appellee, finding sufficient evidence to support the wife's utter and wilful desertion. The dissent advocated adopting a presumption that the wife's leavetaking was with the husband's consent, citing as rationale for such a policy the "paramount interest of the Territory in the preservation of the marital status."[19] *Id.* at 55. The effect of such a presumption in the present case would have resulted in imposing upon appellee the burden of producing evidence showing the nonexistence of the presumed fact, as he was the party against whom the presumption was directed. McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 336 (2d ed. 1972). However, appellee also had the ultimate burden of persuasion[20] of proving appellant's desertion — that the physical separation occurred without his consent and without justification. *In Re Acuna's Will,* 35 Misc. 2d 247, 229 N.Y.S.2d 859 (1962); *In Re Campbell's Estate,* 186 Misc. 842, 65 N.Y.S.2d 164 (1946); *In Re White's Estate,* 126 N.Y.S.2d 375 (1951); *In Re Lamo's Estate,* 63 Misc. 2d 840, 313 N.Y.S.2d 781 (1970); *In Re Holman's Estate,* 46 Misc. 2d 809, 260 N.Y.S.2d 885 (1965); *In Re Crittenden's Estate,* 263 App. Div. 1063, 34 N.Y.S.2d 307 (1942); *In Re Barc's Estate,* 177 Misc. 578, 31 N.Y.S.2d 139 (1941); *Application of Schinzing's Estate,* 2 Misc. 2d 661, 150 N.Y.S.2d 305 (1956).

---

[19] As stated by some courts, a marriage will not be dissolved by the courts except for the soundest of reasons and upon the strictest of proof. Public policy requires that there be no severance of marital relations without adequate cause and satisfactory proof. NELSON, DIVORCE AND ANNULMENT § 3.02 (2d ed. 1961).

[20] The term "burden of proof" encompasses two separate burdens of proof. One is that of producing evidence of a particular fact in issue. The second is the burden of persuading the trier of fact that the alleged fact is true. The burden of producing evidence is usually cast first upon the party who has pleaded the existence of the fact, but it may shift to the adversary when the pleader has discharged his initial burden.

However, the burden of persuasion never shifts during the course of the trial. It need not be allocated until the parties have sustained their burdens of producing evidence — when all the evidence has been introduced and it is time for a decision. The jury, if there is one, must be instructed how to decide the issue if their minds are left in doubt. If the party having the burden of persuasion has failed to satisfy that burden, the issue is to be decided against him. McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 336 (2d ed. 1972).

It was not unreasonable for the trial judge to deny the instruction since the presumption would have required appellee to establish facts that he already had the burden of proving. As Professor McCormick states in his discussion of presumptions and burdens of proof:

> There is no more need to tell the jury why one party or the other has the burden of persuasion where that burden is fixed by a presumption than there is where the burden is fixed on the basis of policies apparent from the pleadings. If the policy considerations existing at the pleading stage and those arising from the evidence both place the burden of persuasion on the same party, we can be fairly certain that the burden is in the right place. However, unless we are willing to increase the measure of persuasion nothing can be gained by informing the jury of the coincidence. The word "presumption" would only tend to confuse the issue.

McCORMICK, *supra* at 829. The policies behind a presumption are usually fully satisfied by placing the burden of persuasion upon the adversary. Thus, instruction D would have been superfluous and serve only to confuse the jury, especially in view of the fact that the jury already was informed as to this point in appellant's instruction 2. Instruction 2 read in pertinent part: "Petitioner has the burden of proof to demonstrate by a preponderance of the evidence that the Respondent wilfully and utterly deserted her husband." We conclude that the trial judge's denial of the instruction did not result in prejudice to appellant.

Appellant also argues that the trial court's denial of her proposed instruction F constituted prejudicial error. That instruction read:

> In order for Petitioner to demonstrate by a preponderance of the evidence that the Respondent wilfully and utterly deserted her husband, Petitioner must demonstrate by a preponderance of the evidence that Respondent's husband made a good faith effort to seek the return of his wife.

As support for this instruction, appellant cites *Bartels v. Bartels*, 31 Haw. 491 (1930), a divorce case in which we held

that there was no wilful and utter desertion on the part of the wife in living apart from her husband pending her bona fide suit against him for separate maintenance, and *Vasconcellos v. Vasconcellos,* 39 Haw. 552 (1951), where we reviewed a finding that the offer of reconciliation by the husband in a divorce action was not made in good faith. However, in neither case did this court explicitly state that such a request of reconciliation was mandatory.[21]

One Hawaii case suggests that whether a good faith effort of reconciliation must be made is dependent on whether the misconduct of the deserted party justified the desertion. The factor of misconduct must first be ascertained before determining whether desertion was justified and whether a request to return must be made. *Tabios v. Tabios,* 38 Haw. 1 (1948). In *Santos v. Santos,* 26 Haw. 124 (1921), we stated that the party at fault in the original separation desiring to prevent desertion from becoming a ground for divorce must in good faith offer to return without other conditions. "The party not at fault need not solicit the return of the other who has left the home without good cause." *Id.* at 127. *Cf. Mattos v. Mattos,* 31 Haw. 568 (1930) (innocent party who refuses to accept deserting party's good faith offer to reconcile cannot maintain action for divorce on ground of such desertion). Furthermore, although there are a number of cases to the contrary, most jurisdictions follow the rule that a blameless petitioner deserted by the respondent may sue for a divorce on those grounds without first seeking reconciliation. *Bates v. Bates,* 153 Pa. Super. 133, 33 A.2d 281 (1943); *Procopio v. Procopio,* 174 Pa. Super. 157, 100 A.2d 115 (1953); *Wittenberg v. Wittenberg,* 56 Nev. 442, 55 P.2d 619 (1936); *Stumpf v. Stumpf,* 228 Md. 350, 179 A.2d 893 (1962); *Solomon v. Solomon,* 290 N.Y. 337, 49 N.E.2d 470 (1943); *Alden v. Alden,* 21 Conn.

---

[21] The *Vasconcellos* court stated at 554: "To establish a case of desertion it should appear that the wife left her husband of her own accord, without his consent and against his will, or that she obstinately refused to return without just cause upon his request." Thus, while evidence of an offer of reconciliation and possible refusal may be introduced and would be material and relevant on the issue of whether the wife left without the husband's consent and against his will, it is neither necessary nor required in proving wilful and utter desertion in petitions to bar dower.

Super. 301, 154 A.2d 522 (1959); *Gaskins v. Gaskins*, 175 A.2d 783 (1965); *Hales v. Hales*, 207 A.2d 657 (1965).

Instruction F required appellee to show by a preponderance of the evidence that the decedent, Manuel Lorenzo, had made a good faith effort to reconcile with appellant. However, the instruction was misleading because it failed to state that such an effort need only be made if decedent himself had been guilty of misconduct, justifying appellant's departure. No clarifying language in the instruction or a separate instruction informing the jury as to this point was given. Thus, the court was correct in denying Instruction F.

Appellant's proposed instruction E, which was refused by the trial court reads:

> In order to demonstrate by a preponderance of the evidence that Respondent's separation from her husband was without justification, Petitioner must demonstrate by a preponderance of the evidence that the conduct of Respondent's husband would not justify a reasonable woman under similar circumstances in living apart from her husband.

*Vasconcellos v. Vasconcellos*, 39 Haw. 552 (1951), and *Kiakona v. Kiakona*, 36 Haw. 49 (1942), were cited as cases providing the basis for this instruction. Appellant contends that the failure to give this instruction was prejudicial because it prevented her from arguing that regardless of whether the jury concluded that decedent Lorenzo had committed adultery, appellant's testimony as to her observations and conversations established reasonable grounds for her separation and therefore her separation was justified.

The instruction correctly placed the burden of persuasion on petitioner-appellee. As the party seeking forfeiture he had the task of establishing the elements of "wilful and utter desertion" of which lack of justification was one. *Kiakona v. Kiakona*, 36 Haw. 49 (1942). The Hawaii cases on divorce concerning this element indicate that it is not to be determined by a set, rigid standard but rather one that turns on what a reasonable person would do under similar circumstances. As this court stated in *Tabios v. Tabios*, 38 Haw. 1, 6 (1948):

But no fixed rule of general application can be formulated as to what extent misconduct of one spouse must reach in order to afford the other reasonable or just cause for separation, each case standing upon its own particular facts and circumstances . . . . Pertinent thereto, the great weight of judicial opinion holds that misconduct of one spouse justifying the other's separation from the matrimonial domicile must be of such serious nature that the essential purpose of the marriage relationship would be defeated or the circumstances must be such that the injured spouse has good reason to believe that cohabitation can no longer be continued with due regard to safety, health or self respect. (Citations omitted.)

The failure to give the instruction had the effect of foreclosing the jury's consideration of other events and factors showing decedent's misconduct (besides those involving his alleged adulterous behavior) especially when read in conjunction with instruction 5. Thus, if there was insufficient evidence to support a finding that Manuel Lorenzo had committed adultery, appellant would be precluded from showing other justifications for her departure. In effect it was easier for the jury to find that her departure was unjustified. This clearly resulted in prejudice to her and instruction E should have been given.

Appellant further argues that appellee's instruction 5 granted by the trial court should have been denied. That instruction reads:

It is the position of Olive Lorenzo that she was justified in leaving her husband, Manuel Lorenzo, because of the adultery of Manuel Lorenzo. In order to demonstrate by a preponderance of the evidence that Manuel Lorenzo committed adultery, in the absence of direct evidence of sexual intercourse, Olive Lorenzo must demonstrate by a preponderance of the evidence (1) an adulterous disposition, that is, licentious desire on the part of Manuel Lorenzo for the paramour, Mary Silva, and (2) opportunity for intercourse between Manuel Lorenzo and the paramour, Mary Silva.

Appellant contends that the instruction was prejudicial because it wrongly placed the burden of proof as to justification on appellant. In Hawaii, the petitioner in a divorce action has the burden of proving "utter and wilful desertion." The husband must show not only that his wife left him and refused to return but also that the wife's departure was unjustified. *Kiakona v. Kiakona*, 36 Haw. 49 (1942). Thus, as petitioner or complainant in this case, appellee bore the burden of establishing lack of justification.

The effect of appellee's instruction 5 was to shift the burden of persuasion from appellee to appellant, requiring her to show justification for the separation. *Bealor v. Hahn*, 117 Pa. 169, 11 A. 776 (1887), and a number of Pennsylvania courts[22] have adopted the rule that upon a showing of physical separation, utter and wilful desertion was presumed and the burden was upon the deserting party to show that the leavetaking was justified. However, the Pennsylvania approach in adopting this shifting burden rule is a minority one. A larger number of the other states[23] maintain that the burden of proving the ground of forfeiture rests on the party asserting it and this burden does not shift during the course of the trial. Furthermore, the instruction conflicted directly with instructions E and 2 as to the burden of proof since both those instructions stated that petitioner-appellee had the burden to demonstrate that appellant wilfully and utterly deserted her husband.

> Both in civil and in criminal cases the instructions of the court must be read together as one connected whole, to ascertain whether they correctly declare the law. The omissions or inaccuracies of one instruction may be cured by the contents of the other instructions, or some of them, and if, when the instructions of the court are considered

---

[22] *Weller v. Weller*, 213 Pa. 265, 62 A. 859 (1905); *Re Nixon's Estate*, 104 Pa. Super. 506, 159 A. 172 (1932); *Buckley's Estate*, 348 Pa. 311, 35 A.2d 69 (1944); *Urbaczewski v. Urbaczewski*, 158 Pa. Super. 614, 45 A.2d 925 (1946); *Fellabaum v. Alvarez*, 165 Pa. Super. 173, 67 A.2d 788 (1949).

[23] *See* Annot., 13 A.L.R.3d 446 (1967).

as a whole, they correctly state the law and are not inconsistent or misleading, the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal. (Citations omitted.)

*State v. Travis,* 45 Haw. 435, 368 P.2d 883, 886 (1962). Accordingly, the trial judge's granting of instruction 5 resulted in prejudice to appellant, because not only was it inconsistent with other instructions that were given, but it also wrongly required appellant to make a showing — by a preponderance of the evidence — of the facts and circumstances justifying her departure.

Finally, instruction 2 also relates to the burden of proof issue. That instruction submitted by appellee and granted by the trial court correctly stated the applicable law. However, the second paragraph of the instruction was misleading because it failed to clearly specify that the petitioner had the burden of proving lack of justification and consent. On remand, the instruction should be altered to incorporate this essential element.

The judgment of the trial judge barring appellant's dower interest is reversed and the cause remanded for a new trial in accordance with this opinion.

*William J. Rosdil (Carlsmith, Carlsmith, Wichman & Case,* of counsel) for Respondent-Appellant.

*William S. Chillingworth (Nakamoto, Yoshioka & Chillingworth,* of counsel) for Petitioner-Appellee.