282 P.3d 543

**Heinrich Alexander RIETHBROCK, Petitioner/Plaintiff–Appellant,**

v.

**Marion Barbara LANGE, Respondent/Defendant–Appellee.**

**No. SCWC–28289.**

Supreme Court of Hawai'i.

March 16, 2012.

R. Steven Geshell, on the briefs, for petitioner/plaintiff-appellant.

James P. Brumbaugh and Brian R. Jenkins (Brumbaugh & Jenkins), on the briefs, for respondent/defendant-appellee.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, DUFFY, and McKENNA, JJ.

Opinion of the Court by
RECKTENWALD, C.J.

Heinrich Alexander Riethbrock and Marion Barbara Lange were married in 1997. Riethbrock filed a Complaint for Divorce in 2004. The Family Court of the Second Circuit (family court) [1] granted the parties' stipulated divorce decree on August 8, 2005, reserving jurisdiction over division of the parties' assets and debts.

Riethbrock subsequently failed to appear at various hearings, failed to respond to Lange's discovery requests, and requested numerous continuances. On Lange's motion, the family court issued a series of orders that indicated its intent to award Lange a one-half share of the parties' real property located in Pukalani, Maui. On June 8, 2006, the family court granted Lange's request to list the Pukalani property for sale, and subsequently filed various orders to effectuate the sale of the property. On October 5, 2006, Riethbrock filed a motion to stay the sale of the Pukalani property and to dismiss, in which he argued that the family court did not have jurisdiction to order the sale because it had failed to enter judgment or issue a ruling dividing the Pukalani property within one year of entering its stipulated divorce decree, as required under this court's holding in *Boulton v. Boulton*, 69 Haw. 1, 730 P.2d 338 (1986), which interpreted Hawai'i Revised Statutes (HRS) § 580–56(d).[2] On October

---

1. The Honorable Simone C. Polak presided.

2. HRS § 580–56(d) (2006) provides:
 Following the entry of a decree of divorce, or the entry of a decree or order finally dividing the property of the parties to a matrimonial action if the same is reserved in the decree of divorce, or the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall

26, 2006, the family court filed its Order Denying Pending Motions, in which it denied Riethbrock's motion for stay and for dismissal. On January 23, 2007, the family court filed an order authorizing escrow to release a portion of the proceeds from the sale of the Pukalani property to Lange.

On appeal to the Intermediate Court of Appeals, Riethbrock argued that: (1) the family court erred in denying his motion to stay and to dismiss because it did not have jurisdiction to divide the Pukalani property after the passage of one year, and (2) the family court's order releasing the funds from escrow violated his constitutional rights to due process and equal protection. The ICA held that the family court implicitly divided the Pukalani property in its orders prior to the one year limitation set forth in *Boulton* and HRS § 580–56(d), and accordingly had jurisdiction to order the sale of the property to enforce its prior property division. *Riethbrock v. Lange,* Nos. 28289 and 28694, 125 Hawai'i 247, 2011 WL 3455829, at *1–2 (Haw. Ct.App. Aug. 8, 2011)(SDO). The ICA further determined that it lacked jurisdiction to consider Riethbrock's contention regarding the order releasing funds from escrow because Riethbrock failed to appeal that order. *Id.* at *2.

In his application, Riethbrock presents the following two questions:

[1.] Did the [ICA] gravely err holding that the [family court] had jurisdiction to divide the Pukalani property more than a year after filing the divorce decree, all in violation of *Boulton v. Boulton,* 69 Haw. 1, 730 P.2d 338 (1986), and HRS § 580–56(d)?

[2.] Did the ICA gravely err in depriving [Riethbrock] of due process by holding that the [c]ourt lacked jurisdiction to decide that the ex parte motion releasing the sale proceeds from escrow?

(Formatting altered).

We conclude that HRS § 580–56(d) was intended to apply only in the narrow context of limiting a spouse's right to dower or curtesy in his or her deceased former spouse's estate. Accordingly, we overrule *Boulton*

and hold that HRS § 580–56(d) did not divest the family court of jurisdiction over the property division in the instant case. We further hold that the ICA did not have jurisdiction to address the family court's order releasing funds from escrow because Riethbrock failed to appeal that order. Accordingly, we affirm the judgment of the ICA.

## I. Background

### A. Family Court Proceedings

On July 15, 1997, Riethbrock and Lange, both natives of Germany, were married in Maui, where they had been living since 1996. The couple had a daughter who was born in 1999.

On April 2, 2004, Riethbrock filed a Complaint for Divorce on grounds that the marriage was "irretrievably broken." Lange filed an Answer on April 13, 2004 stating that the marriage was "irretrievably broken" and that "[a]ll assets should be divided in a just and equitable way between the parties." In his "Position Statement," Riethbrock contended that he should be entitled to the Pukalani property as his "sole and separate property" because he had acquired the Pukalani property "after the parties' separation in July 2001 and [Lange] has made no monetary contribution and has never resided this [sic] real property." Conversely, in her "Position Statement," Lange argued that she and Riethbrock began to live separately when Riethbrock moved onto the Pukalani property, which was "purchased while the parties were married and living together[,]" and that the Pukalani property should "be divided in accordance with Hawai'i Partnership principles with [Lange] having a one-half interest."

The family court initially set the case for trial on November 18 and 19, 2004, but the trial was continued. On April 1, 2005, Riethbrock filed an amended Position Statement in which he asserted that awarding him the Pukalani property would "take[ ] into consideration the assets of [Riethbrock] existing at the time of the marriage and assets acquired since that time." At an April 8, 2005 hear-

---

not be entitled to dower or curtesy in the former spouse's real estate, or any part there-

of, nor to any share of the former spouse's personal estate.

**4**

ing, Lange orally moved to continue trial based on the need for additional information to be provided to the court regarding the awarding of child custody and visitation. The family court continued trial to June 24, 2005, and it appears the trial was subsequently continued again to July 14 and 15, 2005. Riethbrock subsequently moved for another continuance on grounds that he was in Germany and could not return to Hawai'i because he did not have a valid visa. Lange opposed the motion. The family court denied Riethbrock's motion with respect to the divorce and custody and visitation rights, but granted it with respect to the property division. Accordingly, the family court continued trial on issues relating to the property division to December 15 and 16, 2005.

A partial trial on the divorce and child custody issues was held on July 14, 2005, and on August 8, 2005, the family court filed its Stipulated Decree Granting Divorce and Awarding Child Custody, in which it awarded sole legal and physical custody of their daughter to Lange. The family court "reserved" "[a]ll other divorce issues, including but not limited to child support and the division of assets and debts[.]"

On December 13, 2005, Riethbrock sent the family court a fax requesting a continuance because he was suffering from pneumonia and pleurisy. It appears that at a December 14, 2005 hearing,[3] Lange orally moved that Riethbrock submit to an independent medical examination and Riethbrock's counsel orally moved to continue trial. The family court granted both motions and trial was continued to February 3, 2006. On December 15, 2005, Riethbrock's counsel filed a motion to withdraw and for an order to establish an attorney's lien pursuant to HRS § 507–81.

On January 12, 2006, Lange filed an "Ex Parte Motion for an Order Directing [Riethbrock] to do Everything Within His Power to Have the [Pukalani property] Reconveyed Back to [Riethbrock]—by [Alfred Reichardt], in Whose Favor a Quitclaim Deed was Executed by [Riethbrock] and Recorded on December 23, 2005." In his declaration, Lange's counsel stated that he went on-line

to verify the status of the Pukalani property and discovered that Riethbrock had quitclaimed it to Reichardt, Riethbrock's friend in Germany. Lange asserted that the motion was being made "within a few hours of ... learning of the highly improper and prejudicial transfer of title[.]" Lange attached a copy of the quitclaim deed to her motion. The family court subsequently granted the motion and ordered Riethbrock to do "everything in his power to accomplish the immediate reconveyance and recording" of the Pukalani property. Additionally, the court ordered Riethbrock to pay Lange's attorney's fees in connection with the reconveyance.

On January 13, 2006, the family court granted Riethbrock's counsel's motion to withdraw, but denied without prejudice the request to establish an attorney's lien.

In a pro se position statement filed on January 27, 2006, Riethbrock contended that he made the down payment on the Pukalani property with money from his own funds and money gifted to him by his mother.

On February 1, 2006, Lange filed a motion in limine requesting that the family court preclude Riethbrock "from introducing any evidence at the February 3, 2006 trial" and that Riethbrock be "found to be in default" because Riethbrock had not cooperated in the discovery process and had "manipulate[d] and insult[ed] this court" by transferring the Pukalani property. Additionally, Lange requested the court find that:

> Lange has a 50% beneficial interest in said real property. Said interest is based on [Riethbrock] and [Lange] being married and living together at the time that [Riethbrock] purchased said property; based on [Riethbrock] and [Lange] having shared their expenses since 1994; based upon [Lange] having never quitclaimed or otherwise given away her marital interest in said property; and based upon [Riethbrock's] often expressed intention to have [Lange] live with [Riethbrock] on said property (at the time said property was purchased and for years thereafter).

---

**3.** The transcript of the December 14, 2005 hearing is not in the record.

Riethbrock did not appear at the February 3, 2006 trial. At the start of trial, the family court addressed three faxes it had received from Riethbrock, one of which the court interpreted to be a position statement on the property division issue, and the other two as motions for continuances. The court noted the many opportunities it had given to Riethbrock to be present at trial, including an opportunity to participate in the February 3, 2006 trial by way of video conferencing. However, the court received no inquiries or requests from Riethbrock to participate using video conferencing. In addition, with regard to Riethbrock's motions for continuances, the family court stated, in relevant part:

This matter has been pending for quite some time, and it is this [c]ourt's position that it has previously made every effort to allow [ ] Riethbrock to attend this trial and that this [c]ourt does no longer have the ability to wait and see if [ ] Riethbrock will ever return to the United States[.]

. . . .

Riethbrock has had numerous continuances and at this point the [c]ourt is denying any requests for a continuance of trial.

The family court then took up the property division issue. The court noted that it was unaware of any motion to bring in the third party to whom the Pukalani property was conveyed, and determined that the property was not in the marital estate. Lange responded that the family court still had a "legitimate right and interest to carry out the—the parties' interests, particularly [Lange's] interest in the property[.]" The family court stated:

I think there needs to be a finding first that there was a fraudulent transfer. And I think the person whose interest in that property will be effected [sic] has a right to participate in that proceeding, which is why I think that you need to have that person made part and parcel of this proceeding.

I mean I—I see it—two problems I see. Is, one, I—I still think that this property no longer is part of the marital estate. Now, maybe it was fraudulently transferred out of the marital estate and maybe

there is a way of addressing that, but I think that the way of addressing that does also include notice to that person and participation in that proceeding.

... And as I indicated before I can only divide what is part of the marital estate. And if the property is not in the marital estate then the first, I think, order of business would be to get it back in the marital estate if that can be accomplished.

The family court granted Lange's February 1, 2006 motion in limine to the extent it requested that Riethbrock be precluded from presenting evidence. The family court then defaulted Riethbrock only on the issue of child support, stating that it would like to deal with each of the remaining issues separately. Accordingly, the family court did not admit evidence on the value of the property or whether it was part of the marital estate, but rather heard testimony from Lange regarding the parties' financial situation as it pertained to the issue of child support. Lange attempted to have an appraiser testify as to the value of the Pukalani property, but the family court denied the testimony because it believed the property was no longer part of the marital estate. The family court reserved deciding the property division issue until Reichardt was brought into the proceeding. The family court continued the property division portion of the trial until March 8, 2006 to give Lange "enough time to either file a memorandum or obtain service on [Reichardt]."

Lange filed a memorandum of law on February 16, 2006, regarding whether Reichardt needed to be joined. Lange argued that, even in the absence of Reichardt, the family court had jurisdiction to determine: (1) whether the transfer of the Pukalani property to Reichardt was fraudulent; (2) the value of the Pukalani property; and (3) the value of each spouse's interest in said property.

In its March 6, 2006 Order After Trial/Hearing concerning the February 3, 2006 trial, the family court determined, in relevant part:

C. Next, the court dealt with the matter of the real property (located at 241 Hiwalani Loop, Pukalani Hawai'i (TMK(2)2–3–

054–034)) that [Riethbrock] had quit-claimed to a third person ([Riethbrock's] good friend [Reichardt] in Germany) on or about December 5, 2005 (ten days before the December 15, 2005 trial date for which [Riethbrock] had been granted a continuance to February 3, 2006). Said quitclaim was recorded by the Bureau of Conveyances on December 23, 2005.

Based on such transfer of the property, the court makes a finding that said property is not now in the marital estate.

1. The court finds that it only has jurisdiction to decide what is in the marital estate. The court finds that legal notice of these divorce proceedings (concerning the disposition of said real property) need be given to [ ] Reichardt before the court could have jurisdiction to make orders concerning: (1) the validity of the transfer of said property by [Riethbrock]; (2) the [c]ourt's jurisdiction to order the Bureau of Conveyances to do anything concerning said property[;] and (3) whether the court has jurisdiction to rule that said transfer by [Riethbrock] was a fraudulent transfer.

2. The court further determined that it is premature for [Lange] to ask the court to find that the transfer from [Riethbrock] to [ ] Reichardt was fraudulent.

. . . .

D. Concerning [Lange's] Supplementary Motion in Limine; Request # 1:

Order # 3: Said request is GRANTED: [Riethbrock] is precluded from introducing any evidence (as a sanction for [Riethbrock's] continuing unwillingness to provide responses to legitimate discovery; as a sanction for making false statements in order to obtain continuances; as a sanction for "giving away" the major asset that was subject to division by this court; and as a sanction for [Riethbrock's] continuing failure to follow the applicable laws, court rules and procedures that guide divorcing parties).

E. As to Request # 2 (holding [Riethbrock] in contempt) and # 3 (finding [Riethbrock] in default as to all remaining issues in the case):

Order # 4: The court DENIED, in part, [Lange's] Request for Default. Said request was denied in part pending [ ] Reichardt being brought into the case and/or the court receiving legal authority from [Lange] that the court has the authority to grant the default without transferee [ ] Reichardt having an opportunity to participate in the litigation.

Order # 5: The court DENIED, without prejudice [Lange's] request to hold [Riethbrock] in Contempt.

. . . .

G. Concerning Request Number 7 [asking the court to find that Lange has a 50% beneficial interest in the Pukalani property] on page 6 of the Memorandum in Support of [Lange's] Supplementary Motion in Limine:

Order # 7: GRANTED, to the extent that the court will allow [Lange] to put on evidence at the trial today in support of [Lange's] contention that she has a 50% beneficial interest in said property. [Riethbrock] is defaulted on this issue and he precluded [sic] from presenting any contrary evidence or argument concerning the extent of [Lange's] interest in said property.

H. Concerning Request Number 8 [asking the court to mandate that Riethbrock pay Lange's attorney's fees] on page 7 of the Memorandum in Support of [Lange's] Supplementary Motion in Limine:

Order # 8: Said request is GRANTED, as to extent of [Lange's] attorney's fees that [Riethbrock] shall be responsible for paying. [Lange] will be allowed to present further evidence at trial, and by way of affidavit and by way or [sic] argument. [Riethbrock] is defaulted on the issue of [Lange's] attorney's fees and he is precluded from presenting any evidence or argument on this issue.

A hearing was held on March 8, 2006, but no transcripts of that hearing are contained in the record on appeal. On March 29, 2006, the family court entered an Order After Hearing in which the court "reconsidered its position concerning the [Pukalani] property" after reviewing Lange's February 16, 2006 memorandum. The family court found that the Pukalani property was part of the marital

estate. The family court further concluded that it had jurisdiction to decide each spouse's interest in the real property without requiring that Reichardt be made a party. The family court also ordered Riethbrock to "accomplish" the reconveyance of the Pukalani property by March 29, 2006, and set a hearing for May 8, 2006 for all further motions. The family court reserved for decision its determination of the value of the Pukalani property and the value of Lange's interest in the property until May 8, 2006. In regard to child support, the family court found that Riethbrock "cannot be relied on to make child support payments to [Lange]" and accordingly found that "child support payments for a significant period of time should be paid from [Riethbrock's] *one-half interest of said real property*." (Emphasis added). In addition, the family court determined that Lange was entitled to attorney's fees from Riethbrock's interest in the Pukalani property.

On April 21, 2006, Lange filed a renewed motion for default on "all the remaining issues[.]" Also on April 21, 2006, Lange filed a Supplemental Memorandum of Law in which she argued that Riethbrock had no right to introduce evidence regarding the property division. Lange argued that she should receive a "fifty percent interest" in the Pukalani property. Lange noted that she had testified that she and Riethbrock shared expenses and acted as an "economic unit" throughout their marriage. Lange acknowledged that Riethbrock "negotiated for, qualified for and otherwise arranged to purchase real property in his name alone" while she and Riethbrock were married and living together. Lange asserted that Riethbrock kept asking her to move to the Pukalani property. Lange further asserted that she and Riethbrock continued to share expenses and act as an "economic unit." Lange also argued that her son from a previous marriage lived with Riethbrock on the Pukalani property and helped to care for the couple's minor daughter.

On May 5, 2006, Riethbrock's new counsel filed a response to Lange's motion for default. Riethbrock asserted that the Pukalani property had been timely transferred back to Riethbrock. Riethbrock presented arguments regarding the valuation of the Pukalani property, but did not present any argument regarding how the property should be divided.

At the May 8, 2006 hearing, Riethbrock appeared by phone. Riethbrock's new counsel recognized that pursuant to the family court's prior rulings, "[t]here was a 50 percent beneficial interest that [Lange] was held to have in his real property here in Maui." The family court acknowledged that the Pukalani property had been returned to the marital estate, and stated that it would issue a restraining order that Riethbrock "not convey in any fashion the ownership or any control of the property to anyone unless it is pursuant to a court ordered sale." The family court also ordered that "the property be listed and placed for sale effective immediately[,]" and asked the parties to make their best efforts to agree to a listing agent to sell the property. The family court indicated that, upon the sale, but "[b]efore distribution of the sale proceeds from escrow[,] the [c]ourt will make an order detailing such distribution." However, Lange's counsel argued that a hearing on the distribution of the sale proceeds would only be appropriate if the parties could not agree. The family court responded, "in case that distribution of the sales proceeds from escrow is contested for whatever reason[,] the parties can bring this matter before the [c]ourt." The family court advised the parties to submit "a stipulated order detailing the distribution" or, if a stipulation could not be reached, a "proposed order," which the court would then "pick whichever one."

On June 8, 2006, the family court issued its Order After Hearing, in which it recounted its oral rulings, in relevant part, as follows:

6. Concerning [Lange's] [r]equest that the real property be listed for sale immediately: GRANTED. The [c]ourt determined that there is no alternative other than immediately listing said property for sale and selling it.

. . . .

9. Concerning the matter of final distribution of the proceeds of escrow:

a) If the parties agree, they shall submit a proposed Stipulated Order for the [c]ourt's signature.

b) If there is a dispute between [Riethbrock] and [Lange] regarding such distribution, each party shall submit a pleading that includes their [sic] proposed distribution. Oral argument is waived by the parties; the matter will be submitted for the [c]ourt's written decision.

c) There shall be no final distribution until the [c]ourt signs such a distribution order.

. . . .

12. Concerning [Lange's] [r]equest that future child support for a period of at least ten years be taken from [Riethbrock's] share of the proceeds of the real property sale and placed in an interest bearing trust account from which monthly child support payments would be made to [Lange]:

GRANTED. At [Riethbrock's] suggestion, all future child support (approximately seventeen years) plus [Riethbrock's] one-half share of college expenses shall be taken from [Riethbrock's] one-half share of the property sale proceeds. The trust department of a major Hawai'i Statewide bank shall administer said trust fund provided [sic] [Lange] with eight hundred seventy dollars ($870.00) a month payments and shall also provide to both parties annual reports on the condition of the fund and its disbursements. Any funds remaining after the final disbursement of payments, shall be considered the separate property of [Riethbrock] and subject to further distribution by the [c]ourt.

13. Concerning [Lange's] [r]equest that attorney's fees be granted to [Lange] in the amounts that have already been requested and may be requested throughout the pendency of this case:

GRANTED in part and deferred in part. GRANTED as to the latest request for $3,154.31 and deferred as to the other prior request (for $65,928.51) and as to future requests for attorney's fees.

(Formatting altered).

On June 15, 2006, Lange filed a motion to order the clerk of the second circuit court to sign the real property Listing Agreement because Riethbrock had refused to execute it. On August 14, 2006, Lange, citing HRS § 580–56(d) and *Boulton,* filed a motion for the court to promptly enter an order deciding all remaining or reserved property division issues because further delay "may cause this court to ultimately lose jurisdiction to divide the marital property." Lange then filed a series of motions to effectuate the sale of the Pukalani property.

On September 11, 2006, Lange's counsel filed a motion for a judgment and an order establishing an attorney's lien pursuant to HRS § 507–81 on the sale proceeds of the Pukalani property.

On September 12, 2006, the family court authorized the clerk to sign the "Deposit Receipt Offer and Acceptance on [Riethbrock's] behalf to accept the pending offer to purchase" the Pukalani property for $515,000.00. Additionally, on September 26, 2006, the family court ordered the clerk to sign "any and all documents on behalf of [ ] Riethbrock in connection with the sale and escrow of the parties' [Pukalani property.]" In a separate order dated September 26, 2006, the family court ordered the escrow company to "[d]istribute the payments to itself, the real estate brokers and all those who were responsible for the closing of escrow" as well as "[p]ay [Lange's] child support arrearage in the amount of $13,920.00 from [ ] Riethbrock's one-half share of the net proceeds of escrow[.]" In addition, escrow was "restrained and enjoined from making any other distribution of funds from said escrow until further order of [the] [c]ourt."

On October 5, 2006, Riethbrock filed a Motion and Memorandum for Stay of Orders to Sell Property of [Riethbrock]; and for Dismissal of Action (motion for stay). Riethbrock argued that the family court did not have jurisdiction to order the sale of the Pukalani property because it had failed to enter judgment or issue a ruling dividing the property within one year of entering its stipulated divorce decree. Riethbrock cited *Boulton* to support his assertion that the family court's failure to divide the property within one year divested it of jurisdiction to

distribute the sale proceeds. In her opposition to Riethbrock's motion, Lange argued that Riethbrock's reliance on *Boulton* was misplaced, that the family court did divide the property before the lapse of the one year limitation, and that the litigation was prolonged because Riethbrock had engaged in an effort to "delay," "misrepresent," "stonewall," "abuse the litigation process," "and act in bad faith."

On October 19, 2006, the family court held a hearing on Riethbrock's motion for stay, and Lange's motion for the court to promptly decide all remaining or reserved property division issues. Lange argued, inter alia, that the family court had already divided the property by ordering that Riethbrock's 50% interest in the sale proceeds be placed in a trust for future child support payments, and that *Boulton* was distinguishable from the present case. Riethbrock argued, inter alia, that *Boulton* was applicable to the present case, that the court did not establish a valuation for the property, and that the court's "oblique reference" to a one-half interest did not constitute a judgment as to the property division issue. The family court orally ruled as follows:

> that it had previously entered on June 8th an order determining the amount of the child support that shall be taken from [Riethbrock's] one-half share of the sales proceeds. Clearly that—and—and this was, and I previously stated at [Riethbrock's] suggestion and agreement that the child support—the future child support of approximately 17 years plus college costs shall be held in trust.
>
> And so, at this point the [c]ourt is not going to stop the sale [of the Pukalani property]. The [c]ourt is going to give enforcement to the [c]ourt's previous order with respect to the child support.
>
> It appears to the [c]ourt that the [c]ourt may have implicitly made property division in this case. Certainly this sentence that I keep referring to from the June 8th—June 8th order, paragraph 12. Again, it indicates that the child support is to be taken from [Riethbrock's] one-half share of the property sale proceeds.

> And while I agree with [Riethbrock's counsel] that the one-half share of the sale's proceeds is not a determined number, in other words we don't know if the house is going to sell for $513,000, or $500,000, or $450,000, whatever that one-half share is the [c]ourt has previously determined that [Riethbrock] is entitled to one-half share and consequently [Lange] appears to be entitled to one-half share.
>
> However, there is no final order which clearly sets forth determined amounts and detailed division, but I think implicitly the [c]ourt has made a property division of 50–50 in this case.

On October 26, 2006, the family court entered its Order Denying Pending Motions, in which it denied Riethbrock's motion for stay and for dismissal. The court stated:

> Although not explicitly stated in the [c]ourt's June 8, 2006 Order, it is implicit that the [c]ourt was dividing the real estate on the basis that each party would receive a one-half share of the net sale proceeds of the property, because the [c]ourt ordered that [ ] Riethbrock's one-half share of the proceeds would initially be placed in a trust fund for past and future child support payments. Therefore, the [c]ourt has finally divided the property within the one-year period as required by HRS § 580–56(d).
>
> Secondly, the [c]ourt denies the motion to make any additional orders with respect to property division, because such orders would now be outside the prescribed period for such orders.
>
> [Riethbrock's] motion for dismissal of [Lange's] property claims on the basis that no property division order was made is also denied. As noted above, the [c]ourt implicitly made an order finally dividing the property in its Order dated June 8, 2006. Because that motion of [Riethbrock] is denied, it follows that [Riethbrock] is not entitled to a stay of the sale, and that motion is also denied.

On November 24, 2006, Riethbrock timely filed his first Notice of Appeal (Case No. 28289) of the family court's October 26, 2006 Order Denying Pending Motions.

On January 23, 2007, Lange filed an Ex Parte Motion Releasing [Lange's] Funds from Escrow. Also on January 23, 2007, the family court granted Lange's ex parte motion and ordered that escrow was authorized to release funds totaling $100,000.00 from Lange's share of the sale proceeds and $1,740.00 from Riethbrock's share of the sale proceeds to cover his child support payments for December 2006 and January 2007. No Notice of Appeal was filed from this order.

On July 24, 2007, the family court filed an Order Pertaining to Request for Attorney's Fees, which mandated, inter alia, that Riethbrock pay Lange's attorney's fees and costs in the amount of $65,928.51. The family court referenced its previous determinations regarding the awarding of attorney's fees to Lange. On August 20, 2007, Riethbrock filed his second Notice of Appeal (Case No. 28694), in which he challenged the family court's July 24, 2007 Order.

## B. ICA Appeal

Riethbrock filed two separate Opening Briefs in Case Nos. 28289 and 28694. *Riethbrock*, 2011 WL 3455829, at *1. The ICA consolidated the two appeals for disposition. However, the ICA's ruling on Riethbrock's appeal in Case No. 28694, which concerned the family court's order regarding attorney's fees, is not challenged in Riethbrock's questions presented. Accordingly, the arguments raised in Riethbrock's Opening Brief in Case No. 28694 are not discussed further. Hawai'i Rules of Appellate Procedure (HRAP) Rule 40.1(d)(1) ("The application for a writ of certiorari ... shall contain ... [a] short and concise statement of the questions presented for decision. . . . Questions not presented according to this paragraph *will be* disregarded.") (emphasis added).

In his Opening Brief to the ICA in Case No. 28289, Riethbrock asserted two points of error:

A. The family court committed reversible error in denying Riethbrock's motion for stay of orders to sell property of [Riethbrock] and for dismissal of the action.

. . . .

B. The family court committed reversible and constitutional error in filing the ex parte order on January 23, 2007, authoriz-ing escrow to release $100,000 of the net sale proceeds from the Riethbrock house to [Lange] and her ex-attorney in violation of Riethbrock's constitutional rights to due process and equal protection.

Riethbrock argued that his motion to stay the orders to sell the Pukalani property was impermissibly denied because the family court lost jurisdiction when it failed to "divide and distribute" the Pukalani property within one year of its filing the divorce decree as required under *Boulton* and HRS § 580–56(d). Riethbrock contended that the family court did not divide the Pukalani property in its June 8, 2006 order because the court explicitly stated that the parties shall submit a proposed stipulated order, and that "[t]here shall be no final distribution until the [c]ourt signs such a distribution order." Additionally, Riethbrock argued that "[t]he record does not reveal the existence of any such order filed within one year of August 8, 2005 in which the [c]ourt finally divided and distributed [Riethbrock's] property and the Pukalani house." Accordingly, Riethbrock argued that the family court "lacked jurisdiction of the subject matter to divide and distribute Riethbrock's real estate[.]"

Riethbrock also contended that the family court's January 23, 2007 ex parte order authorizing escrow to release $100,000 of the sale proceeds of the Pukalani property to Lange violated his right to procedural and substantive due process, his right to equal protection, and Hawai'i Family Court Rules (HFCR) Rules 5 and 7.

In her Answering Brief, Lange argued that although the family court did not explicitly state that it was dividing the property in its June 8, 2006 order, the family court was not divested of jurisdiction because it had "defaulted [Riethbrock] as to [Lange's] claim of a 50% interest in the property," "used that division in making related orders (such as the fund for child support)[,]" and "fixed the value of the property at the sum of $513,000." Alternatively, Lange asserted that the majority opinion in *Boulton* improperly characterized the legislative history of HRS § 580–56(d) as applying to all marital property, instead of merely "dower and curtesy rights" as asserted by the dissenting opinion. (Citing *Boulton*, 69 Haw. at 7, 730 P.2d at 341

(Wakatsuki, J., dissenting)). Lange also argued that post-Boulton decisions have shown that "a timely order for property division can be enforced after the one year period has ended[,]" and that Riethbrock's misconduct, i.e.; conveying the Pukalani property, should toll the statute. (Citing *Todd v. Todd*, 9 Haw.App. 214, 832 P.2d 280 (1992); *Richter v. Richter*, 108 Hawaiʻi 504, 122 P.3d 284 (App.2005); *Kano v. Kano*, 8 Haw.App. 172, 799 P.2d 55 (1990)). In addition, Lange argued that the January 23, 2007 order releasing funds from escrow did not violate Riethbrock's constitutional rights. Lange further argued that Riethbrock's appeal was, in effect, an untimely appeal of the June 8, 2006 order dividing the property.

In his Reply Brief, Riethbrock argued, inter alia, that: (1) *Boulton* is applicable and still valid law; (2) Lange's cited cases were distinguishable from the present situation in which the family court lacked jurisdiction to divide the Pukalani property and order the distribution of the sale proceeds; and (3) the ICA had appellate jurisdiction.

The ICA concluded that because the family court had "implicitly" divided the property in its June 8, 2006 order, "Lange's interest in the Pukalani Property and the methodology by which she would receive that interest had been timely determined," before the one-year limitation set forth in *Boulton* and HRS § 580–56(d). *Riethbrock*, 2011 WL 3455829, at *1–2. Accordingly, the ICA determined that the family court properly denied Riethbrock's motion to stay. *Id.* at *2. In addition, the ICA determined that it lacked jurisdiction to address the family court's January 23, 2007 order because it "arose two months after the [first] notice of appeal was filed[,]" and Riethbrock failed to file a separate notice of appeal from that order. *Id.*

The ICA affirmed the family court's October 26, 2006 Order Denying Pending Motions, and entered its Judgment on Appeal on August 23, 2011. *Id.* at *3. Riethbrock timely filed his application on November 16, 2011. Lange did not file a response.

## II. Standards of Review

### A. Statutory Interpretation

 "Statutory interpretation is a question of law reviewable de novo." *State v.*

*Wheeler*, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009) (internal quotation marks omitted). This court's construction of statutes is guided by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

*Id.* (quoting *Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of the City & Cnty. of Honolulu*, 114 Hawaiʻi 184, 193, 159 P.3d 143, 152 (2007)).

### B. Subject Matter Jurisdiction

 The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard. Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action. When reviewing a case where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction. A judgment rendered by a circuit court without subject matter jurisdiction is void.

*Lingle v. Hawaiʻi Govʻt Employees Ass'n, AFSCME, Local 152*, 107 Hawaiʻi 178, 182, 111 P.3d 587, 591 (2005) (quoting *Amantiad v. Odum*, 90 Hawaiʻi 152, 158–59, 977 P.2d 160, 166–67 (1999)).

## III. Discussion

### A. HRS § 580–56(d) does not limit the family court's jurisdiction to divide the marital property at issue in the instant case

Riethbrock argues that pursuant to *Boulton*, the one year limitation set forth in HRS

§ 580–56(d) divested the family court of jurisdiction to divide the Pukalani property. HRS § 580–56(d) provides:

Following the entry of a decree of divorce, or the entry of a decree or order finally dividing the property of the parties to a matrimonial action if the same is reserved in the decree of divorce, or the elapse of one year after entry of a decree or order reserving the final division of property of the party, *a divorced spouse shall not be entitled to dower or curtesy in the former spouse's real estate, or any part thereof, nor to any share of the former spouse's personal estate.*

(Emphasis added).

▆▆ In *Boulton,* this court interpreted HRS § 580–56(d) to divest the family court of jurisdiction to divide property in the personal estate of a "former spouse" one year after the filing of a divorce decree. 69 Haw. at 4–5, 730 P.2d at 340. In his dissent, Justice Wakatsuki argued that the one year limitation set forth in HRS § 580–56(d) should be applied only to a spouse's dower or curtesy interest in a former spouse's property. *Id.* at 6–7, 730 P.2d at 341.

We conclude that *Boulton* should be overruled. We begin our analysis with a brief discussion of dower and curtesy, and the historical context in which HRS § 580–56(d) arose.

### 1. Dower and Curtesy

▆▆ Dower is "a provision made by the law for the support of a wife *after the death of the husband." Richards v. Richards,* 44 Haw. 491, 504, 355 P.2d 188, 196 (1960) (emphasis added) (citing *Farm v. Cornn,* 31 Haw. 574, 1930 WL 2906, at *6 (Haw.Terr. Oct. 9, 1930)); *In re Estate of Lorenzo,* 61 Haw. 236, 241, 602 P.2d 521, 526 (1979) ("Despite dower's current statutory form, its purpose and effect remain the same as that established at common law as a marital right created to provide an assured means of support for the surviving wife."). At the time HRS § 580–56(d) was enacted in 1973, HRS § 533–1 (Supp.1973) provided:

Every woman shall be endowed of one-third part of all the *lands* owned by her

husband at any time during marriage, in fee simple, in freehold, or in leasehold, unless she is lawfully barred thereof. She shall also be entitled, by way of dower, to an absolute property in the one-third part of all his *remaining property* owned by him at the date of his death, after the payment of all his just debts.

(Emphasis added).

Although common law dower was limited to a widow's interest in her former spouse's real property, statutory dower included a widow's interest in both her deceased spouse's real property and his personal property. *See In re Castle's Estate,* 25 Haw. 108, 1919 WL 1309, at *4 (Haw.Terr.1919); *see also Carter v. Carter,* 10 Haw. 687 (Haw.Rep. 1897).

▆▆ Similar to a woman's dower interest, curtesy is a widower's right to certain property of a deceased wife. *See DeMello v. Home Escrow, Inc.,* 4 Haw.App. 41, 50, 659 P.2d 759, 765 (1983) (noting that "during the life of the wife the husband has no curtesy right, inchoate or otherwise"); *Iona v. Uu,* 1905 WL 1336, at *1–3 (Haw.Terr. Jan. 28, 1905) (noting that a husband received a curtesy interest upon the death of his wife). At the time HRS § 580–56(d) was enacted, HRS § 533–16 provided:

In case the wife dies first and intestate, then except as in this section provided, her property shall immediately descend to her heirs, but shall be in all cases, whether she die testate or intestate, subject to a life interest in the husband in one-third of the wife's *lands* owned by her in fee simple, in freehold, or in leasehold, at the date of her death. The husband shall also, whether the wife die testate or intestate, be entitled, by way of curtesy to an absolute property in the one-third part of it all the wife's *remaining property* owned by her at the date of her death, after the payment of all her just debts.

HRS § 533–16 (Supp.1973) (emphasis added).

Accordingly, both dower and curtesy described a spouse's interest in his or her

deceased spouse's "real property" and "remaining property."[4]

## 2. Evolution of HRS § 580–56(d)

Revised Laws of Hawai'i (RLH) § 324–45 (1955), the predecessor statute to HRS § 580–56(d), was entitled "Forfeiture of dower" and provided: "A wife divorced shall not be entitled to dower in her husband's real estate, or any part thereof, nor to any share of his personal estate." Accordingly, under RLH § 324–45, a wife's dower interest terminated immediately upon her divorce.[5]

In 1973, the legislature recodified RLH § 324–45 as HRS § 580–56.[6] In apparent recognition of the increasingly common practice of a bifurcated divorce, the legislature made several amendments. First, part (b) provided that after a divorce, all HRS chapter 533 rights, i.e., those rights relating to

dower and curtesy, were preserved until a final order on the division of the property was issued. HRS § 580–56(b). Second, part (c) provided that, in a situation where one spouse remarries and then dies before the property in the first marriage was finally divided, the new spouse would not have any HRS chapter 533 rights until after the property division order from the former marriage was entered. HRS § 580–56(c). However, after the entry of the property division order, the new spouse would have HRS chapter 533 rights in the property that was awarded to their spouse in the former divorce. HRS § 580–56(c). Third, part (d) provided that one year after entry of a divorce decree reserving the final division of the couple's property, a divorced spouse "shall not be entitled to dower or curtesy in the former spouse's real estate, or any part thereof, nor to any share of the former spouse's personal

---

4. In 1977, dower and curtesy were largely eliminated. *See DeMello*, 4 Haw.App. at 50 n. 5, 659 P.2d at 765 n. 5 (noting that 1976 Haw. Sess. Laws Act 200, § 1 at 372, "eliminated dower and curtesy effective July 1, 1977, but preserved all rights which accrued under case and statutory law relating to dower and curtesy which vested prior to such date"). Dower was entirely abolished in 1997. *See* 1997 Haw. Sess. Laws Act 244, § 17 at 495.

5. There appears to have been no analogous predecessor statute that would have provided that a husband forfeit his curtesy interest upon divorce.

6. HRS § 580–56 (Supp.1973) provided, in relevant part:

(a) Every decree of divorce which does not specifically recite that the final division of the property of the parties is reserved for further hearing, decision, and orders shall finally divide the property of the parties to such action.
(b) Following the entry of a decree of divorce in any matrimonial action in which the final division of the property of the parties to such action is reserved for further hearing, decision, and orders, each party to such action shall continue to have all of the rights to and interests in the property of the other party to such action as provided by chapter 533 to the same extent he or she would have had such rights or interests if the decree of divorce had not been entered, until the entry of a decree or order finally dividing the property of the parties to such matrimonial action, or as provided in subsection (d).
(c) When a party to a matrimonial action has remarried following the entry of a decree of divorce, in which the final division of the property of the parties is reserved for further hear-

ings, decisions and orders, but prior to the entry of a decree or order finally dividing the property owned by the parties to that action, notwithstanding the provisions of chapter 533, the spouse of such remarried party shall have none of the rights or interests in the former spouse's real property or personal estate as provided in chapter 533, or as otherwise provided by law, until such time as a decree or order finally dividing the property owned by the parties or either of them as of the effective date of the entry of the decree of divorce dissolving his or her prior marriage shall be entered. Upon the entry of a decree or order finally dividing the property of the parties to a matrimonial action in which a decree of divorce has been entered, the spouse of a party to such action who has remarried shall have all of the rights of a spouse as provided by chapter 533, or as otherwise provided by law, in and to the property of the former spouse vested in such spouse by such decree or order finally dividing the property of the parties or either of them, as of the effective date of the entry of the decree of dissolution of the prior marriage.
(d) Following the entry of a decree of divorce, or the entry of a decree or order finally dividing the property of the parties to a matrimonial action if the same is reserved in the decree of divorce, or the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled to dower or curtesy in the former spouse's real estate, or any part thereof, nor to any share of the former spouse's personal estate.
HRS § 580–56 has not materially changed since 1973. *See* HRS § 580–56 (2006).

estate." HRS § 580–56(d). Notably, although the predecessor statute applied only to dower, i.e., a woman's interest in her husband's property, the 1973 statute covered the rights of both spouses.

In a 1973 Committee Report regarding the amendments, the Senate Judiciary Committee noted:

> The *purpose of this bill is to establish rights of divorced persons to dower and curtesy in their former spouse's estates* when the divorce decree does not finally divide the property of the parties.
>
> . . . .
>
> The divisible divorce, that is where the marriage is dissolved but the other rights of the parties have not been adjudicated, is quite common. Under present law, in the event one party to that divorce were to die before the division of the property was completed, intervening rights of a new spouse could have attached. This hiatus should be eliminated by statutory enactment.
>
> The proposed language reserves to a former spouse the rights to dower and curtesy presently granted by Hawai'i Revised Statutes until the entry of a Decree which finally divides the property of the parties to the former marriage.
>
> . . . .
>
> The bill clearly indicates that *this right to dower or curtesy* will extend only for a period of one year of the entry of a decree or order reserving the final division of property.

S. Stand. Comm. Rep. No. 852, in 1973 Senate Journal, at 967–68 (emphasis added); *see* H. Stand. Comm. Rep. No. 618, in 1973 House Journal, at 1045.

Thus, it appears that the Legislature sought to clarify who would have a dower or curtesy interest where property division issues were not resolved, but a divorced spouse remarried and later died before the property

division in the former marriage was resolved. As this court explained in *Magoon v. Magoon*, 70 Haw. 605, 613, 780 P.2d 80, 84–85 (1989), HRS § 580–56(c) "serves to prevent the attachment of intervening dower or curtesy rights in the event a party remarries before the property division is effected; it bars the right of dower or curtesy 'to a subsequently acquired spouse until the property of the parties [to the pending action] has been finally divided[.]' " (Brackets in original). Under the 1973 amendments, the decedent's former spouse would continue to have a dower or curtesy right in the deceased spouse's real and personal estate for one year after the filing of the divorce decree. 1973 Haw. Sess. Laws Act 192, § 2 at 333–34; HRS § 580–56(c)–(d) (1973). Under the predecessor statute, RLH § 324–45, the subsequent wife would immediately have rights in the property, although the former wife may otherwise have been entitled to a share of the property if her spouse had not died before the property was finally divided.

Therefore, the legislative history and statutory scheme indicate that HRS § 580–56(d) was meant to apply solely in the context of a spouse's right to dower or curtesy after a divorce.[7]

### 3. *Boulton* should be overruled

In 1986, thirteen years after HRS § 580–56 was recodified and amended, this court held in *Boulton* that HRS § 580–56(d) divested the family court of jurisdiction to divide a former spouse's "personal estate" one year after the filing of a divorce decree reserving property division. 69 Haw. at 5, 730 P.2d at 340. There, the family court granted a divorce decree in January 1984, but it did not immediately resolve the issue of property division. *Id.* at 3, 730 P.2d at 339. The case "lay dormant" in the family court for over a year before the husband served a request for the wife to produce documents. *Id.* The husband sought division of real property that

---

7. As mentioned *supra* note 4, dower and curtesy were sharply restricted in 1977. However, under the Uniform Probate Code, which was enacted in 1977, a surviving spouse still has an interest in the estate of a deceased spouse. *See, e.g.*, HRS §§ 560:2–102 (2006) (concerning a surviving spouse's right to an intestate share), 560:2–202 (2006) (concerning a surviving spouse's right to an elective share), 560:2–301 (2006) (concerning the rights of a surviving spouse unprovided for in a will). Because the question of whether HRS § 580–56(d) extends to the rights of a surviving spouse under the Uniform Probate Code is not before us, we do not reach that issue.

had been owned by the couple. *Id.* The wife filed a motion to dismiss based on HRS § 580–56(d). *Id.* The family court construed the statute "to divest the family court of jurisdiction[,]" and accordingly, dismissed the case. *Id.*

On appeal, the husband argued that the phrase "dower or curtesy" in HRS § 580–56(d) referred to both the "former spouse's real estate" and the "former spouse's personal estate." 69 Haw. at 3, 730 P.2d at 339. Under this construction, HRS § 580–56(d) *only* applied to dower and curtesy rights, rather than any other rights that a spouse might have in the other's property. This court rejected the husband's argument, and instead held that the statute should be read as: "[f]ollowing . . . the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled . . . to any share of the former spouse's personal estate." [8] *Id.* at 4, 730 P.2d at 339.

The husband also argued that "the term 'personal estate' only refer[red] to a deceased person's hereditament, rather than a living person's property." *Id.* at 4, 730 P.2d at 340. This court noted that it was not clear whether the term "personal estate" applied to the property of both living and deceased persons, and noted that the term was not defined in HRS chapter 580. *Id.* Furthermore, because there was no legislative history to guide it in construing the term "personal estate," this court looked to case law interpreting the term "personal estate" in the context of divorce actions, and determined that "personal estate" in HRS § 580–56(d) included "property of living persons." *Id.* at 4–5, 730 P.2d at 340. This court then held that real property constituted part of the "personal estate" for purposes of HRS § 580–56(d), and thus, needed to be divided within the one year limitation stated in the statute. *Id.* at 4, 730 P.2d at 340. Accordingly, this court concluded that the family court did not have jurisdic-

tion to resolve the parties' property division because it failed to divide the property within one year of filing the divorce decree. *Id.* at 5, 730 P.2d at 340.

In his dissent in *Boulton*, Justice Wakatsuki analyzed the legislative history of HRS § 580–56(d) and concluded that "it [wa]s clear [ ] that the 1973 amendment was directed only at preserving *dower and curtesy rights* in the former spouse prior to property division, and that the one-year period was intended as an outside time limit on those *dower and curtesy rights* only." 69 Haw. at 7, 730 P.2d at 341 (emphasis in original) (Wakatsuki, J., dissenting). Justice Wakatsuki continued:

> The majority's application of the "dower or curtesy" phrase to only real estate and not personal estate means that under the pre–1973 statute a wife could not share in any of her husband's property after a divorce decree was entered. In other words, the majority's construction would make property division after the dissolution of the marriage impossible.

> Therefore, the one-year cut-off should apply only to dower and curtesy rights in the real and personal estate of the former spouse. Because neither dower nor curtesy is involved here, the lower court improperly dismissed the case.

*Id.*

■ We take this opportunity to reexamine HRS § 580–56(d) and this court's application of that statute in *Boulton*. At best, the language of HRS § 580–56(d) is ambiguous as to whether it applies only to a *dower and curtesy interest* in a former spouse's personal estate or whether it also applied to the personal estate of *living persons*. Where a statute is ambiguous, we look to the legislative history for guidance to determine the legislature's intent. *See Wheeler*, 121 Hawai'i at 390, 219 P.3d at 1177 (holding that "the meaning of the ambiguous words may be

---

8. This court's analysis was as follows:

 The parallel wording of the phrases "to any dower or curtesy in the former spouse's real estate" and "to any share of the former spouse's personal estate" indicates that each modifies the previous portion of the sentence requiring resolution within one year. Thus,

 we read the plain wording of the statute to be, "[f]ollowing . . . the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled . . . to any share of the former spouse's personal estate."

 *Id.* at 3–4, 730 P.2d at 339.

sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law") (internal quotation marks and citation omitted). As previously discussed, the legislative history and statutory scheme of HRS § 580–56 clearly indicate that the limited purpose of the statute was to impose a one year limit only on the family court's jurisdiction to award dower and curtesy. *See* 1973 Haw. Sess. Laws Act 192, § 2 at 333–34; S. Stand. Comm. Rep. No. 852, in 1973 Senate Journal, at 967–68; H. Stand. Comm. Rep. No. 618, in 1973 House Journal, at 1045. Nothing in the legislative history suggests that the legislature intended the statute to divest the family court of jurisdiction to divide all of the former spouse's property.

█ In determining that the phrase "dower or curtesy" applied only to the former spouse's real estate, the *Boulton* majority broadened the scope of HRS § 580–56(d) to apply the limitations period to the division of the former spouse's entire personal estate, rather than only that portion of the personal estate in which a former spouse had a "dower or curtesy" right. This interpretation is inconsistent with the legislative history of HRS § 580–56(d).[9]

Moreover, the majority's interpretation effectively deleted the phrase "dower or curtesy in the former spouse's real estate" from HRS § 580–56(d). *See Boulton,* 69 Haw. at 4, 730 P.2d at 339 ("[W]e read the plain wording of the statute to be, '[f]ollowing ... the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled ... to any share of the former spouse's personal estate.' "). The *Boulton* majority's interpretation essentially rendered the phrase surplusage. *See Potter v. Hawaii Newspaper Agency,* 89 Hawai'i 411, 422, 974 P.2d 51, 62–63 (1999) ("Our rules of statutory construction require us to reject an interpretation of [a] statute that renders any part of the statutory language a nullity.").

Furthermore, as Justice Wakatsuki noted, "[t]he majority's application of the 'dower or curtesy' phrase to only real estate and not personal estate means that under the pre-1973 statute a wife could not share in any of her husband's property after a divorce decree was entered." *Boulton,* 69 Haw. at 7, 730 P.2d at 341 (Wakatsuki, J., dissenting). As discussed *supra,* prior to its recodification as HRS § 580–56, RLH § 324–45 was entitled "[f]orfeiture of dower" and provided, "[a] wife divorced shall not be entitled to dower in her husband's real estate, or any part thereof, nor to any share of his personal estate." This language was clearly limited only to a wife's dower interest, which, as stated above, was an interest that arose only upon the death of a husband. *See Richards,* 44 Haw. at 504, 355 P.2d at 196. However, if the *Boulton* majority's analysis were applied to RLH § 324–45, a wife's interest in all of her former spouse's property would cease immediately upon divorce, even if the former spouse were still living.[10]

Accordingly, we disagree with the reasoning of the *Boulton* majority. We, therefore, overrule *Boulton,* and hold that HRS § 580–56(d) does not limit the family court's juris-

---

9. We note that this court's holding in *Boulton* also conflicts with the partnership model of marital property division. Under partnership principles, property acquired during the marriage that is not marital separate property belongs to the marital partnership and not to the "former spouse." *See Hussey v. Hussey,* 77 Hawai'i 202, 206–07, 881 P.2d 1270, 1274–75 (App.1994), *overruled on other grounds by State v. Gonsales,* 91 Hawai'i 446, 984 P.2d 1272 (App.1999). However, under the interpretation of HRS § 580–56(d) set forth in *Boulton,* marital partnership property that is not distributed within one year of the divorce decree would default to the spouse in whose name the property is titled, and thus would not be divided pursuant to partnership principles.

10. Contrary to the *Boulton* majority's construction, the legislative history to the 1973 amendments noted that "[t]he divisible divorce, that is where the marriage is dissolved but the other rights of the parties have not been adjudicated, is quite common." S. Stand. Comm. Rep. No. 852, in 1973 Senate Journal, at 967; H. Stand. Comm. Rep. No. 618, in 1973 House Journal, at 1045.

diction to divide the property at issue in the instant case.[11]

## B. The ICA lacked jurisdiction to consider Riethbrock's contention that the family court erred in granting Lange's motion to release funds from escrow

In its SDO, the ICA held that it lacked jurisdiction to address "Riethbrock's second point of error ... concerning the January 23, 2007 Order Granting Ex Parte Motion Releasing Defendant's Funds From Escrow [that] arose two months after the notice of appeal was filed." *Riethbrock*, 2011 WL 3455829, at *3. Riethbrock appears to argue that the ICA "committed grave constitutional error [in] deciding it lacked jurisdiction" because his second notice of appeal, which was filed on August 20, 2007 (Case No. 28694), and which the ICA consolidated with the present case, "brought up for review ... one of the four distinct parts of a divorce case[.]" As discussed below, the ICA did not err in failing to address Riethbrock's second point of error regarding the January 23, 2007 Order because the ICA lacked jurisdiction to entertain Riethbrock's contention.

Riethbrock filed two notices of appeal. In his first Notice of Appeal (Case No. 28289), filed November 24, 2006, Riethbrock appealed the family court's October 26, 2006 Order Denying Pending Motions, in which the court denied Riethbrock's motion for stay on the ground that it had implicitly divided the Pukalani property in its previous orders. On August 20, 2007, Riethbrock filed his second Notice of Appeal (Case No. 28694), in which he challenged the family court's July 24, 2007 Order Pertaining to Request for Attorney's Fees that mandated that Riethbrock pay Lange's attorney's fees.[12] Neither Notice of Appeal challenged the family court's January 23, 2007 Order Granting Ex Parte Motion Releasing Lange's Funds From Escrow.

In *Cook v. Surety Life Ins., Co.,* 79 Hawai'i 403, 409, 903 P.2d 708, 714 (App. 1995), the ICA held that when a party appeals from a single order, "this court will only consider other orders which were *preliminary rulings upon which the subject Order was predicated or were part of the series of orders which collectively led to that Order.*" (Emphasis added); *cf. Weinberg v. Mauch,* 78 Hawai'i 40, 46, 890 P.2d 277, 283 (1995) (holding that when an order is properly certified under HRCP Rule 54(b), the certification "necessarily render[s] every preliminary ruling upon which it was predicated final and appealable as well") (citation omitted); *Security Pac. Mortgage Corp. v. Miller,* 71 Haw. 65, 71, 783 P.2d 855, 858 (1989) (noting that review is limited to the scope of the orders appealed from). Here, the January 23, 2007 Order was not a "preliminary ruling[ ]" upon which the subject Order "was predicated[.]" First, the January 23, 2007 Order cannot be considered a "preliminary" ruling to the October 26, 2006 Order because it was filed later. *Black's Law Dictionary* 1299 (9th ed. 2009) (defining "preliminary" as "[c]oming before" and usually "leading up to

---

11. We further note that, even under the holding in *Boulton,* Riethbrock's argument is without merit because the family court implicitly divided the Pukalani property before the one year limitations period elapsed. The family court entered its stipulated divorce decree on August 8, 2005. It subsequently implicitly divided the Pukalani property in various orders, including its June 8, 2006 order, in which it ruled that: "all future child support (approximately seventeen years) plus [Riethbrock's] one-half share of college expenses *shall be taken from [Riethbrock's] one-half share of the property sale proceeds.*"

The family court also "defaulted" Riethbrock on the issue of Lange's interest in the Pukalani property. In defaulting Riethbrock on this issue and determining in multiple orders that Riethbrock's one-half share of the sale proceeds of the Pukalani property should be set aside for child support, the family court timely and finally divid-ed the Pukalani property within the one year period required under *Boulton.*

In *Richter,* the ICA held that the one year limitation in HRS § 580-56(d), as interpreted in *Boulton,* only applied to the family court's jurisdiction to "decide *how* the property of the parties will be distributed[,]" but did not limit the family court's jurisdiction to enforce the property division orders. 108 Hawai'i at 506-07, 122 P.3d at 286-87 (emphasis added). Here, the family court timely divided the property under the holding in *Boulton,* and thus had jurisdiction under the holding in *Richter* to enforce its prior orders by ordering the sale of the Pukalani property.

12. As noted *supra,* the ICA consolidated Case No. 28694 with Case No. 28289. Inasmuch as Riethbrock does not challenge the ICA's ruling on the issues presented in Case No. 28694, we do not discuss them further. *See* HRAP Rule 40.1(d)(1).

the main part of something"). Second, although the January 23, 2007 order was "preliminary" to the July 24, 2007 order, the January 23, 2007 Order was not an order upon which the July 24, 2007 attorney's fees order "was predicated" because it dealt with a separate and unrelated issue, i.e., authorizing escrow to release funds. Accordingly, the ICA lacked jurisdiction to address Riethbrock's arguments relating to the January 23, 2007 Order.

In addition, Riethbrock's reliance on *Eaton v. Eaton*, 7 Haw.App. 111, 748 P.2d 801 (1987), for the proposition that the second Notice of Appeal brought up for review the January 23, 2007 Order "as one of the four distinct parts of a divorce case" is misplaced. In *Eaton*, the ICA determined that there are four distinct parts of a divorce case: "(1) dissolution of the marriage; (2) child custody, visitation, and support; (3) spousal support; and (4) division and distribution of property and debts." 7 Haw.App. at 118, 748 P.2d at 805. The ICA also concluded that "parts (2), (3), and (4) are each separately final and appealable as and when they are decided, but only if part (1) has previously or simultaneously been decided[.]" *Id.* at 118–19, 748 P.2d at 805. Citing *Eaton* and without more, Riethbrock appears to argue that the family court's January 23, 2007 Order was a "final appealable order or part." However, Riethbrock never filed a notice of appeal from this "final appealable order or part." As such, Riethbrock's reliance on *Eaton* is misplaced.

Inasmuch as the ICA properly concluded that it lacked jurisdiction to entertain Riethbrock's contentions, we do not address Riethbrock's remaining arguments that the family court's January 23, 2007 order violated his due process rights, equal protection rights, Hawai'i Family Court Rules 5 and 7, and the family court's own November 20, 2006 Order.

### IV. Conclusion

In sum, *Boulton* wrongly held that HRS § 580–56(d) deprived the family court of jurisdiction to divide all property one year after the filing of a divorce decree. We therefore overrule *Boulton* and hold that HRS § 580–56(d) does not limit the family court's jurisdiction to divide the property at issue in the instant case. Accordingly, the family court properly denied Riethbrock's motion for stay and to dismiss. In addition, we hold that the ICA did not have jurisdiction to address the family court's January 23, 2007 order releasing funds from escrow. We therefore affirm the judgment of the ICA.